[No. 19355. Department One. January 11, 1926.]

J. M. T. WILLIAMS *et al., Appellants,* v. WILLIAM BRILEY *et al., Respondents.*[1]

[1] COURTS (9-1) — JURISDICTION — EXERCISE BEYOND TERRITORIAL LIMITS—CONSENT. A judge of the superior court may with the consent of all the parties, set and hear a case and sign the decree at a place other than the county seat, and the judgment, when filed with the clerk of the court, cannot be impeached for want of jurisdiction.

Appeal from a judgment of the superior court for Okanogan county, Carey, J., entered May 1, 1924, upon findings in favor of defendants in an action to set aside adoption proceedings, tried to the court. Affirmed.

*P. D. Smith,* for appellants.

*Johnson & O'Connor,* for respondents.

[1]Reported in 242 Pac. 370.

TOLMAN, C. J.—This is an action to set aside a decree of adoption. From a judgment denying relief and dismissing the cause, the plaintiffs have appealed.

Briefly stated, the salient facts are that Elizabeth Gaverish, with her husband and child, resided in Chicago. Mrs. Gaverish became an invalid and apparently spent the best part of several years in sanitariums seeking recovery of her health. During this period, a second child was born to them, and Mrs. Gaverish's health continued to be such that the infant was placed in the home of another, to be cared for, and consequently Mrs. Gaverish saw but little of this younger child except as her husband, from time to time, brought the child to see its mother. Within a year or two after the birth of this child, Mr. Gaverish met an accidental death, and, as compensation therefor, voluntary or otherwise does not appear, a considerable sum of money became available. Part of this evidently came into the hands of Mrs. Gaverish, and something like $1,250 was in some manner placed in trust for each of the children.

Upon learning of the death of Mr. Gaverish, a sister of Mrs. Gaverish residing in Okanogan county, in this state, went to Chicago, and on her return brought back to Okanogan county with her the child who is in the record referred to as Baby Ann and is the subject of this litigation. Mrs. Gaverish and the older daughter followed soon afterwards, took up her home with her sister for a time, and, disagreeing with her, made her home with others in the same neighborhood. They for a time lived in a tent with a sister of the respondent Rachel Briley near the Briley home, and thus Mrs. Gaverish seems to have become intimately acquainted with the Brileys. Mrs. Gaverish's health continued somewhat uncertain and pre-

carious, but it rather appears that she improved some-
what, especially at times, in health and strength after
coming to Okanogan county. The Brileys had no
children; and, Mrs. Gaverish apparently thinking them
to be prosperous farmers, good people, of the same
religious faith with herself, and deeming Mrs. Briley
to be a motherly woman, in the summer of 1919, when
Baby Ann was three and one-half years old, the re-
spondents, William and Rachel Briley, by agreement
with Mrs. Gaverish, filed in the superior court for
Okanogan county their petition to adopt Baby Ann,
and attached to the petition was the written consent
of the mother, as follows:

"Comes now Elizabeth Gaverish, and shows to the
court that she is the mother of Ann Gaverish, a minor
child about 3½ years of age, the same being the child
mentioned and set out in the petition of William Briley
and Rachel Briley, his wife, wherein they seek to adopt
said child, and hereby freely give my full and un-
reserved written consent to them to adopt said minor
child, to take it and care for it as though it were their
own child, of their own flesh and blood.

"I further waive all right to the custody and control
of said child and to the right of having any and all
citations and legal notice of the hearing of the petition
to adopt said Ann Gaverish.

"MRS. ELIZABETH GAVERISH."

This consent was duly acknowledged before a notary
public. It appears from the testimony of witnesses,
but not otherwise, that, following the filing of this
petition and consent, and on the 15th day of August,
1919, the matter came on for hearing in the office of
the attorneys for the petitioners, at Oroville, in
Okanogan county, Washington, a place some forty-five
miles distant from the county seat of that county,
before the judge for that county, who happened to be
passing through and consented to hear the matter for

the convenience of all concerned. Evidence was heard, Mrs. Gaverish was examined as to her written consent, and a decree of adoption was signed by the judge and duly entered. Thereafter Mrs. Gaverish remarried, and she, with her present husband, J. M. T. Williams, in the latter part of September, 1922, petitioned the court to vacate and set aside the decree of adoption, upon the ground that she was misled, deceived and overreached and her consent to the adoption obtained by fraud; and later, by amendment, a second cause of action was included, attacking the decree of adoption because of its supposed invalidity growing out of the hearing at a place other than the county seat.

As to the first cause of action, we have carefully studied the entire record and are convinced that no good could follow a discussion in detail of the evidence offered by the contending parties. We entirely agree with the trial court, who said, at the conclusion of the trial:

"As to the first cause of action, it appears to me the testimony here is conclusive that the plaintiff knew what she was doing when she signed that waiver and thereby consented to the adoption of the child in that original case, and that she wasn't deceived or misled or overreached in any way, as is alleged in the complaint."

[1] The second cause of action presents a question of law and not of fact, namely, whether an action may be tried at a place other than the county seat, but within the same county, all interested persons being before the court and none objecting.

Respondents seem to contend that the judgment is regular on its face; that it recites "Done in open court" and that evidence *dehors* the record is required to impeach it; and therefore it can be attacked only in the manner and within the time prescribed by our

statutes on the subject of vacation of judgments. But, unfortunately, while the original record was introduced upon the hearing below with the understanding that its place should be supplied by a certified copy, that has not been done, and we have only the testimony and the admissions of counsel to guide us here, and feel that we should not assume anything beyond what is thus clearly shown or admitted. Therefore, taking the record as it here appears, the court did sit in a place other than the county seat, but with the full consent of all persons interested; which consent is just as effective and far-reaching as would have been their written stipulation; and there heard all of the testimony and there signed the decree, which of course became effective only upon its filing in the clerk's office. That the superior court, or a judge thereof, may so sit at a place other than the county seat, and even outside the county where the action is pending, has already been decided in *Meisenheimer v. Meisenheimer,* 55 Wash. 32, 104 Pac. 159, 133 Am. St. 1005; where it is said:

"The order of Judge Steiner was, in substance and effect, when construed with the stipulation and letter of counsel, a request of Judge Chadwick to hear the motion in the city of Spokane, and was so construed by the parties. Broadly interpreted in the light of the record, with a view to effectuate the legislative intent, the several statutes conferred jurisdiction on Judge Chadwick to determine the motion, and the judgment entered by him was *res judicata.* The motion was not determined until the judgment was filed with the clerk. *Northern Counties Inv. Trust v. Hender,* 12 Wash. 559, 41 Pac. 913.

"Moreover, jurisdiction of the parties was obtained by their appearance, and the subject-matter was one over which the superior courts have general jurisdiction derived from the constitution. This being true, a party cannot appear before a judge or a court acting

at his instance, have a full and fair hearing upon the merits, and then question jurisdiction because of an adverse decision. . . ."

"The respondent also urges that Judge Chadwick, sitting in chambers, was without jurisdiction to hear the motion. The constitution, art. 4, § 6, provides that the superior court shall always be open except on non-judicial days. Whether we treat the judgment as the act of the judge or the act of the court, the effect will be the same. Under our judicial system it cannot be successfully contended that an act done by a judge sitting on the bench where no jury is required has any greater legal force than the same act done by him in an adjoining room by courtesy styled his chambers. Moreover, he sat at the time and place agreed upon by the parties, and neither can now complain that he sat at a place in the city of Spokane other than the courtroom. These observations, of course, would not apply to a case where a superior court judge or a superior court undertook, without objection, to determine questions where the power to determine them had not been conferred by the constitution on superior courts."

Being satisfied with that ruling, we shall continue to follow it.

The judgment is affirmed.

Askren, Main, and Holcomb, JJ., concur.