The petitioners, Lee Gaban and Clorene Gaban, his wife, on June 20, 1945, under the several provisions of Chapter 21759, Laws of Florida (Sections 72.07 to 72.26, Fla. Stats. 1941), presented to the Circuit Court of St. Lucie County, Florida, their petition praying for an order of adoption of an unnamed girl child born June 18, 1945, to Kathering Snipes and husband, W.B. Snipes, at the Memorial Hospital in Fort Pierce, Florida. The consent of the natural parents as required by Section 8 of Chapter 21759, supra, (Section 72.14, F.S. 1941) was evidenced by an instrument in writing signed by them, attached to and made a part of the petition for adoption. On the preliminary showing made by the petitioners an interlocutory order dated October 16, 1945, was entered below under Section 13 of Chapter 21759 (Sec. 72.19, F.S. 1941), which granted to the petitioners the temporary custody of the child for a period of six months from September 14, 1945.
On December 29, 1945, Katherine Snipes and husband W.B. Snipes, filed in the adoption proceeding cause a petition praying that testimony be taken by the court and thereafter an order be entered anulling, setting aside and holding as naught the interlocutory order of October 16, 1945, and that the child by an appropriate order be awarded to its natural parents, the petitioners. The petition in part, alleged that the mother was advised that her child was born dead and the hospital authorities were disposing of the remains; that she was told that she would have had a seven and three-quarter pound baby girl if it had not been born dead; that she was told that the child never breathed, although it was placed under an oxygen tank. That on June 18, 1945, Katherine Snipes was ill from the birth of a child and a few hours thereafter, while under the influence of an anesthetic, signed the paper attached to the petition seeking adoption; that she had no memory or recollection that the paper was read or explained to her and she was without knowledge in any manner of its contents.
That the attending physician told others that Katherine Snipes had had a miscarriage and that the baby was born *Page 599 
dead, but stated further that the baby had lived and was a girl child and that Lee Gaban and wife, Clorene Gaban, had the child; that the natural parents did not give their consent that the child be adopted by the Gabans. It was alleged that fraud and deceit was practiced on the natural parents in an effort to get their consent to the adoption, which they would have refused had they known the contents of the paper which it was alleged they signed. It was further alleged that the natural parents had a home and was able to care for and rear their child. That they had no knowledge of the adoption proceedings until they consulted an attorney on December 8, 1945.
The testimony of several witnesses was offered and heard by the Court below and exhibits were placed in the record by counsel for the respective parties, and thereafter a final decree was made and entered which denied the petition of the natural parents to vacate and set aside the interlocutory decree which awarded the temporary custody of the child to the Gabans. The petition of adoption of the child was granted to the Gabans and it was decreed to be their child and legal heir as provided in Sections 14 and 16 of Chapter, 21759,supra, (Sections 72.20 and 72.22, F.S. 1941). The natural parents appealed.
Chapter 21759, Acts of 1943, has conferred on the Circuit Courts of Florida the power and authority to make and enter interlocutory orders and final decrees awarding both (a) the temporary custody and (b) final adoption of described children of Florida, but only as applied to the facts in this controversy when the written consent and approval of the natural parents are first had and obtained and filed with the petition praying for adoption. Section 8 of Chapter 21759,supra. One of the essential questions here for adjudication is whether or not from a consideration of all the evidence adduced by the parties it is legally sufficient to establish written consent and approval of the natural parents to the adoption by the Gabans of the unnamed girl child so as to establish a substantial compliance with the aforesaid act? Likewise, if the written consent thereto was obtained from Katherine Snipes, the mother, some few hours after the child's delivery when a patient at *Page 600 
the hospital and after the mother had been given a "few whiffs of morphine" to alleviate her suffering incident to childbirth, may she under these and other conditions and circumstances as disclosed by the record be permitted to withdraw the written consent previously given and reclaim her child?
Section 1 of Chapter 21759, supra, designates the State Welfare Board as Guardian for all minor children of Florida (a) who have no natural parents; (b) or who have been abandoned by their natural parents; (c) or whose natural parents have voluntarily surrendered their rights and have no legal guardian; (d) or who have been permanently committed to a licensed child placing agency. We fail to find in the record evidence of parental delinquencies on the part of Katherine Snipes and her husband, W.B. Snipes. They are shown to be poor people dependent entirely upon their daily labor and efforts for support and maintenance. They are shown to be of good repute and have planned to make their future home on a farm in Coffee County, Georgia, owned by some member of the mother's family, where the unnamed girl child is to be reared.
Section 6 of Chapter 21759, supra, (Sec. 72.12, F.S.), prescribe the contents of the petition for adoption and Section 7 (Sec. 72.13, F.S.) provides for the issuance of process on the petition when filed. Section 8 (Sec. 72.14, F.S.) dispenses with process as outlined or had under Section 7, supra, only when the approval or consent of the natural parents is in writing, executed and signed by the natural parents in the presence of two witnesses and acknowledged before a notary and then attached to the petition for adoption or subsequently filed in the cause. The record here discloses the written consent and signatures thereto of the parents in statutory form and the voluntariness thereof was not challenged by the natural parents prior to the entry of the interlocutory order awarding the temporary custody of the unnamed girl child to the Gabans on October 16, 1945. The question as to whether or not the written consent of the natural parents to the adoption of their unnamed girl child by the Gabans was voluntarily executed or lawfully obtained became an issue after the entry *Page 601 
of the interlocutory order and prior to the entry of the final decree, when considerable testimony was offered by the respective parties before the lower court.
It manifestly was the intention of the Legislature in the enactment of Chapter 21759, supra, not to take from natural parents the custody or control of their children, in the absence of a showing of parental delinquencies, but if natural parents desired and for reasons satisfactory to them, agreed or consented to the adoption by another of their minor child or children, then this parental consent to the entry of each interlocutory order and final decree of adoption under our statute must not only be shown to have been freely and voluntarily given, but the parental consent so given must be in writing, duly executed and signed by the parents, in the presence of two witnesses and lawfully acknowledged. In many of the other jurisdictions, prior to the entry of final decrees of adoption, courts require and make it jurisdictional to the entry of a final decree of adoption that personal attendance in open court of the natural parents must be had and their testimony of consent and approval reduced to writing and made a part of the permanent record in the cause. It was the legislative intent that the written consent and approval of the natural parents must affirmatively appear, not only when each interlocutory order is entered affecting the minor, but the parental consent must clearly appear in the record at the time of the entry of the final decree of adoption. The purpose of the proceedings for the adoption of children is to extinguish the rights of the natural parents and to establish such rights in the adopted parents. Chapter 21759, supra, has since enactment been considered and construed by this Court in re the Adoption of Ralph Theodore Stonehouse, 155 Fla. 223, 19, So.2d 788; in re Brock, 157 Fla. 291, 25 So.2d 659; In re Johnson, 157 Fla. 25, 24 So.2d 711.
Prior to the enactment of Chapter 21759, supra, on the question of the consent of the natural parents to adoption of their minor children this Court in Fielding v. Highsmith,152 Fla. 837, 13 So.2d 208, in part said:
"Even where adoption statutes do not specifically require personal notice to be given, it must be presumed that the *Page 602 
Legislature intended that the natural parents should have an opportunity to be heard before having their rights to the child declared forfeited; if such statutes are to be upheld as constitutional. Such, we think, was the view of this Court in the case if In re: Whetstone, 137 Fla. 712, 188 So. 576, when considered in the light of the authorities there relied upon. See In Re: Knott, 138 Tenn. 349, 197 S.W. 1097; 1 Am. Jur. Sec. 40, p. 642; Id. Sec. 44, p. 644; 2 C.J.S., Adoption of Children, Sec. 38b, p. 421; Annotations; 24 A.L.R. 416, 76 A.L.R. 1078.
"To adopt a contrary view would be to recognize that the courts have arbitrary authority to forfeit the rights of the parents to his minor child, without giving him an opportunity to be heard in his own behalf. Such procedure would be despotic in the extreme and contrary to the plainest principles of morality and justice."
Likewise in Lambert v. Taylor, 150 Fla. 680, 8 So.2d 393, we said:
"The fraudulent gaining of the consent of the natural parent to the adoption has been held to be sufficient to warrant a court in setting aside the adoption. 2 C.J.S. 435, Sec. 45.
It has also been held that if the mother of a child neglected to read and thoroughly note the contents of the papers she signed when giving up its custody to her mother-in-law, which papers in fact constituted an adoption agreement, if she was prevented from so doing by legitimate inferences drawn from her husband's letters that the change in the custody of the child would be only temporary, and by the close confidential relations between all the parties, she should not be bound by her signature to the agreement. Westendorf v. Westendorf,187 Iowa 659, 174 N.W. 359. See also the case of Williams v. Briley, 137 Wn. 262, 242 P. 370, where the court held that the natural mother in consenting to the adoption was deceived, misled and overreached."
Some reputable authorities hold that natural parents can or may withdraw or revoke their written consent previously given to the adoption of their minor child or children at any time prior to the entry of a final decree of adoption. 2 C.J.S. *Page 603 
386. The trend of the most recent authority, however, is toward the position that where a natural parent has freely and knowingly given the requisite consent to the adoption of his or her child and the adoptive parents have accepted and acted, then the consent is ordinarily binding and cannot be withdrawn. 156 A.L.R. 1011. It is the conclusion of the writer that the latter rule is here inapplicable because the requisite consent of the mother, as disclosed by the record, was not freely and knowingly obtained so as to fall within the rule.
The conditions and circumstances surrounding the mother at the time of signing the written consent for the adoption of her child by another at the Memorial Hospital at Fort Pierce raises a serious question as to whether or not it was a free and voluntary act of a normal mind, because (a) some few hours previous to signing she had given birth to a child; (b) she was a patient and being treated at the time in the hospital; (c) she was not free from pain and suffering when she signed the written consent; (d) a few whiffs of morphine had been administered to alleviate her pain and suffering; (e) a doubt exists as to her mental condition because of the morphine when the paper was signed; (f) she testified that she was told at the hospital that her child was born dead; (g) the name or names of the adoptive parents were withheld from her. We do not overlook the extravagant remarks made by the husband about the hospital prior to obtaining his signature. We do not accept at face value the allegations of the petition of the natural parents or the evidence given in support thereof. In fairness to the adoptive parents we should state that they seem to have acted with the best of motives.
The point is made that the Chancellor below heard the respective parties, their several witnesses, considered the exhibits offered, and otherwise functioning as a court of chancery, and entry of the final decree settled the many disputes and conflicts in the testimony and for this reason the decree challenged should not be disturbed on this appeal. It is quite true that Section 2 of Chapter 21759, supra, gives to the Circuit Courts of Florida exclusive jurisdiction in all matters of adoption. Section 15 provides that all adoption proceedings *Page 604 
shall be as in chancery and shall be governed by the rules of chancery, except as expressly modified or changed by the Act. The Chancellor on final hearing held that the written consent of the natural parents attached to the petition forever concluded their interest in the unnamed child. We do not think so, as it was not freely and voluntarily obtained from a mind functioning under normal conditions and circumstances. When the mother learned of the existence of her child on December, 1945, she instituted these proceedings to reclaim her child and her efforts have been continuous and persistent until submitted through counsel to this Court.
Counsel for appellees contend that the right of the natural parents to withdraw their written consent for the adoption of their unnamed girl child by the Gabans was not raised in the lower court and cannot be argued for the first time on this appeal. The answer to the contention is the sworn pleading of the parents filed on December 29, 1945, and is viz:
"That your petitioner, Katherine Snipes, mother of the said girl child, at the time of the birth of the said girl child at 4 o'clock A. M., June 18, 1945, was seriously ill and for days thereafter was seriously ill from the birth of said child. That on June 18, 1945, your petitioner Katherine Snipes was under the influence of the anesthetic administered during the birth of the girl child and has no knowledge or recollection of signing the paper attached to the petition filed in this cause by Lee Gaban and Clorene Gaban, his wife and has no recollection or memory of said paper having been read to her on being advised of the contents thereof or knowing in any way the contents of the said paper . . ."
"That the petitioners had no knowledge of the proceedings filed by Lee Gaban and Clorene Gaban, his wife, for the adoption of the girl child born as issue of these parents on June 18, 1945, until December 8, 1945, after consulting their attorney."
The decree appealed from is reversed with directions for the entry of an appropriate order or decree awarding the custody of the unnamed girl child to its natural parents.
THOMAS, C.J., BUFORD, J. and FABISINSKI, Associate Justice, concur. *Page 605 
TERRELL, ADAMS and BARNS, JJ., dissent.