In Re: Mary Elizabeth Whetstone, a Minor.

188 Sou. 576.
Division B.
Opinion Filed May 9, 1939.
Rehearing Denied May 18, 1939.

*Edgar W. Waybright, Sr.,* and *Roger J. Waybright,* for Petitioner.

*T. Rogero Mickler, Bertram Mickler* and *Mickler & Mickler,* for Respondents.

PER CURIAM.—Mattie Whetstone filed a petition in this Court for writ of habeas corpus or in the alternative for writ of certiorari testing the question as to who is entitled to the custody of a minor child. A writ of habeas corpus was issued by this Court, and J. A. Whetstone and Josephine M. Whetstone filed a return thereto. The cause is now before the Court on a motion for judgment notwithstanding the return.

The child, Mary Elizabeth Whetstone, was born to Miss

Mattie Whetstone out of wedlock on June 17, 1931. On July 10, 1931, a petition was filed in the Juvenile Court of Duval County, Florida, by a probation officer alleging that Mary Elizabeth Whetstone was abandoned and dependent upon the public for support. On July 13, 1931, an order committing the child to the care and custody of the Children's Home Society of Florida was entered by the Judge of the Juvenile Court. After three months the child was returned to its mother, and on August 10, 1934, as order was entered by the judge of the Juvenile Court vacating its order of July 31, 1931, and committing the child to its mother.

In August, 1936, petitioner, Mattie Whetstone, and the child visited petitioner's brother J. A. Whetstone in St. Augustine, Florida, and while visiting there a son of her brother, being about the same age as Mary Elizabeth, became very attached to her. The child was left with J. A. Whetstone for eighteen months, then petitioner contends that she insisted upon having her child with her. Respondents, in their return, allege that the child remained with them upon the distinct understanding with petitioner that she was to stay in respondents' custody indefinitely and until she had reached maturity and received a proper education.

On November 8, 1937, a petition was filed in the Juvenile Court of Duval County, Florida, by a probation officer alleging that the child was dependent upon the public for support and that the mother was unfit and improper to have the care, custody and guardianship of said child.

On the same day the judge of the Juvenile Court committed the custody of the child to Mrs. Joe Whetstone, but on the following day the order was changed and the child was committed to the custody of the parents of petitioner. However, again on November 11, 1937, the judge of the

Juvenile Court committed the child to Mr. and Mrs. Joe Whetstone pending investigation, report and recommendation of the Children's Home Society. Then on November 22, 1937, pursuant to the report and recommendation of the Children's Home Society of Florida, the child was committed to Mr. and Mrs. Whetstone under the supervision of the Children's Home Society. Finally on March 11, 1938, the Judge of the Juvenile Court entered a further order committing the child to the care and custody of Mr. and Mrs. Joe Whetstone, Mattie Whetstone filed a petition for rehearing and modification of the order of March 11, 1938, which was denied by the court.

Respondents, Mr. and Mrs. Joe Whetstone, then went to North Carolina for their summer vacation. Before leaving they made arrangements with their counsel to proceed with the action for the adoption of the child and directed their counsel to give published notice of such intention. Notice was accordingly given that the respondents intended to apply on July 7, 1938, for an Order of the Circuit Court in and for St. Johns County, Florida, authorizing the adoption of the child. The petition of respondents was presented to the judge on July 7, 1938, a Guardian *Ad Litem* was appointed and filed a written answer stating that he believed it for the best interests of said minor that an order authorizing said adoption be granted. Respondents, as the persons to whom said minor had been committed as aforesaid, also filed their written consent to the adoption, and the circuit judge on July 8, 1938, entered his order ratifying and confirming the adoption of the child by respondents.

On May 30, 1938, petitioner herein had caused a writ of habeas corpus to be issued to determine the custody of said child by the Circuit Court of Duval County, Florida, but

was unable to obtain service upon Mr. and Mrs. Joe Whetstone.

Petitioner contends that the order of the Circuit Judge authorizing the adoption of the child is void because it was entered without petitioner's knowledge or consent and without giving her any notice of the action or an opportunity to be heard.

The law is well settled that the mother of an illegitimate child has all the parental rights of other parents, and hence is entitled to notice of proceedings to adopt her child. Purinton v. Jamrock, 195 Mass. 187, 80 N. E. 802, 18 L. R. A. (N. S.) 926; 1 Am. Jur., Adoption of Children, Sec. 37, p. 639-640; Annotations: 30 L. R. A. (N. S.) 152, 24 A. L. R. 428, Ann Cas. 1914A, 224; 2 C. J. S., Adoption of Children, Sec. 21c, p. 387.

Unless the mother forfeited her rights in relation to her child by some misconduct, it is generally held that she is entitled to notice of proceedings to adopt it, and, in the absence of such notice, the proceedings are invalid as against the natural parent. Annotations: 24 A. L. R. 416, 76 A. L. R. 1078; 1 Am. Jur., Adoption of Children, Sec. 40, p. 642; Ibid, Sec. 44; p. 644; 2 C. J. S., Adoption of Children, Sec. 38b, p. 421.

Section 5077, Compiled General Laws of 1927, provides that any person desiring to make application for the adoption of children shall give four weeks' notice of the intention to apply in a newspaper published in the county of residence of such person. This is the only provision contained in the statutes relating to notice of adoption proceedings.

It has been held that if adoption statutes do not provide for notice to the natural parents of the child to be adopted, but do provide for proceedings in courts of record, it must be presumed that the legislature intended that such pro-

ceedings would be in accordance with the usual practice of such courts. Magevney v. Karsch, 167 Tenn. 32, 65 S. W. (2nd) 562, 92 A. L. R. 343; *In re* Knott, 138 Tenn. 349, 197 S. W. 1097. It could not be thought that the legislature intended that a child should be taken from the custody of either one of its natural parents, unless it was with their consent or made to plainly appear that it was to the interest of the child that it be done. This could not be legally adjudged unless the parents should have notice of the proceedings or voluntarily appear.

This court is of the opinion that adoption statutes, in order to be constitutional, must be construed so as to authorize the adoption of a child by strangers only in cases where the natural parents consent to the adoption, or where the proof shows that the child has been abandoned by its natural parents, or where the parents have been permanently deprived of the custody of the child, or that it is manifestly to the interest of the child that it be taken from their custody by some judicial proceeding of which the natural parents have notice. *In re* Knott, *supra;* 2. C. J. S., Adoption of Children, Sec. 38b (1), p. 421; Annotation, 24 A. L. R. 416.

Respondents assert that the custody of the child had been taken from petitioner for delinquency by adversary proceedings, therefore notice of adoption proceedings was unnecessary, the parent having already been fully divested of the custody and control of the child. This leads us to the following question: Can a Circuit Judge acquire jurisdiction under the statute so as to make a valid order of adoption as to a minor child where the child has been committed to the custody of the prospective adoptive parents by the Juvenile Court of Duval County without due notice of such adoption hearing being served on the natural parent or without such natural parent giving her consent thereto?

Chapter 10493, Special Acts of 1925, Laws of Florida (amending Section 2, Chapter 7005, Special Acts of 1915) provides that the Juvenile Court of Duval County Florida,

"Shall have original jurisdiction to hear, determine and adjudicate all cases affecting children as defined in Chapter 6216 of the Acts of 1911, approved June 6th, 1911, and the usual powers of a committing magistrate."

Being a court of special and limited jurisdiction, its jurisdiction must be strictly construed.

In the proceedings in the juvenile court the state, through one of its probation officers, is the principal and moving actor; the immediate welfare of the child is the paramount, if not the sole and controlling, consideration. Its fundamental purpose is the conservation of the welfare of the child as a member of the population of the state. Any judgment or order in such proceeding, whether the parent has notice or knowledge thereof or not, is not absolutely determinative of the rights of the parties, at least where, as in this case, it is provided in the order that the Court shall retain jurisdiction of the cause for the purpose of making such further or other orders therein for the welfare of the child as may be from time to time necessary.

On the other hand, the proceedings for the adoption of children are purely statutory, and, affecting as they do substantial rights, there must be substantial compliance with their provisions. 2 C. J. S. Adoption of Children, Sec. 35, p. 415.

The moving party here is not the state, but the prospective adoptive parents. The purpose of such proceedings is to extinguish such rights as are then existing in the living natural parent and the creation of rights in the adoptive parents. There must be an abandonment thereof by the natural parent by conduct or consent, or else due notice to such parent of the proceedings wherein such transforma-

tion is to take place—this is true even in the absence of statutory provisions. 1 Am. Jur., Adoption of Children, Secs. 40, 44, p. 632-644; 2 C. J. S., Adoption of Children, Sec. 38b, p. 321.

We therefore hold that there is no element of consent by the mere appearance of petitioner in the commitment proceedings to the possible institution at some other time, place, and in some other court of adoption proceedings, whereby the status of the family relationship may be permanently and entirely changed.

We base our conclusions in this case upon the following propositions:

First, the judicial proceedings for the commitment of dependent children under Chapter 7005, Special Acts of 1915, Laws of Florida, and amended by Chapter 10493, Special Acts of 1925, and the judicial proceedings for adoption under Section 5076-5081, Compiled General Laws of 1927, are entirely distinct, separate and independent.

Second, that notice of and participation in the commitment proceedings by petitioner cannot be substituted for her required consent to or notice of subsequent proposed adoption proceedings.

Third, that the written consent of respondents cannot be declared to be a legal and sufficient substitute for the consent of or notice to petitioner, for it cannot be said that by the commitment proceedings petitioner was *permanently* deprived of the custody of her child.

There having been no notice given to the mother, the attempted adoption proceedings before the Circuit Judge of St. Johns County are not binding on the mother. The minor child is accordingly remanded to the custody of her mother, petitioner herein.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.