**LIBBY RUSH FIELDING and T. B. FIELDING, v. DAN HIGHSMITH**

13 So. (2nd) 208          January Term, 1943
April 30, 1943          En Banc

R. G. *Tittsworth,* and *W. N. Burnside,* for plaintiffs in error.

*Elliott Adams* and *Wm. C. McLean,* for defendant in error.

SEBRING, J.:

On August 17, 1942, the appellee, Dan Highsmith, instituted a habeas corpus proceeding against appellants to recover custody of his minor daughter, Johnnie Lou. The petition attacks the validity of a proceeding brought in the Circuit Court of Hillsborough County by Libby Rush Fielding —then Libby Rush—for the adoption of his minor daughter, on the ground that the order of adoption was entered without notice to him. On final hearing in the habeas corpus proceeding the trial court found that the father was a fit and proper person and awarded him the custody of the child. There was no direct adjudication in the order of the validity, or invalidity, of the adoption proceedings. We assume, however, that the trial court's judgment was predicated upon a determination that the adoption proceedings were invalid and that consequently the appellee, as the natural father, had the paramount right to the child, for there is no finding whatever concerning the fitness, or unfitness, of the appellants.

By the great weight of authority, an order of adoption procured by a stranger will be declared invalid as against the natural parents, unless it is made to appear that the parents have consented to the adoption; or that it is manifestly for the best interest of the child that it be taken from the custody of the natural parents by such a judicial proceed-

ing, of which the parents have notice and an opportunity to be heard; or that the minor has been abandoned, and notice of the proceedings and opportunity to be heard cannot be given to the parents because their whereabouts are unknown; or that the parents have been permanently deprived of the custody of the child by a competent court having jurisdiction of the parents and the child. Even where adoption statutes do not specifically require personal notice to be given, it must be presumed that the Legislature intended that the natural parents should have an opportunity to be heard before having their rights to the child declared forfeited; if such statutes are to be upheld as constitutional. Such, we think, was the view of this Court in the case of In re: Whetstone, 137 Fla. 712, 188 So. 576, when considered in the light of the authorities there relied upon. See In re Knott, 138 Tenn. 349, 197 S.W. 1097; 1 Am. Jur. Sec. 40, p. 642; Id. Sec. 44, p. 644; 2 C.J.S., Adoption of Children, Sec. 38b, p. 421; Annotations: 24 A.L.R. 416, 76 A.L.R. 1078. To adopt a contrary view would be to recognize that the courts have arbitrary authority to forfeit the rights of the parent to his minor child, without giving him an opportunity to be heard in his own behalf. Such procedure would be despotic in the extreme and contrary to the plainest principles of morality and justice.

In the present case, it is clear from the testimony that consent to the adoption was not procured from the natural parent nor was notice given, or attempted to be given, of the adoption proceedings, although the father could have been located by diligent search and inquiry. We must hold, therefore, that as a matter of law the order of adoption is invalid as against the father.

It does not necessarily follow from this holding, however, that the custody of the child must go back to the father in all events. This is a habeas corpus proceeding brought primarily to determine the custody of a minor child, even though in the process the validity of the adoption proceedings is incidentally involved. In such proceedings the moral, intellectual and material welfare of the child are the matters of chief importance, Bourne v. Hinsey, 134 Fla. 404, 183 So. 614, and the infant should be placed where its interests will be

best subserved, without regard to the validity or invalidity of the adoption proceedings. Of course all things being equal, the legal right of the father will generally prevail. But the rights of the parent are not absolute; many other factors must be taken into consideration. "The ties of nature and of association, the character of the applicant for the child, its age, health, and sex, the moral or immoral surroundings of its life, the benefits of education and development, and pecuniary prospects, as well as many other considerations, enter into the judicial determination." Marshall v. Reams, 32 Fla. 499, 14 So. 95, 96, 37 Am. St. Rep. 118.

The preference of the child is likewise entitled to consideration, where the child has reached the age of intelligent discretion. And while the choice made by the child will not necessarily be conclusive in the matter, it is highly persuasive in cases where the parent has voluntarily allowed the child to remain in the custody of others for such a long period of time that a strong mutual attachment exists between them. Marshall v. Reams, *supra.*

In the present case it appears that the child's mother died in 1932, at a time when the infant was 3 years of age. She left her husband, Dan Highsmith, and 9 children surviving her. Two of these children were married and maintained their own homes. The remaining seven children were unmarried and lived with their father. After the death of the mother, Mrs. Beatrice Rodgers, a married daughter, took Johnnie Lou into her home to live with her. This met with the approval of Dan Highsmith, who was out of work and had no one to care for his children. There she lived until she was 6 years of age. At that time Mrs. Libby Rush (now Libby Rush Fielding) of Tampa, Florida, visited in the Rodgers home in Jacksonville. While there, she met Johnnie Lou and became attracted to her. Noting Mrs. Rush's feeling for the child, Mrs. Rodgers, who had a large family of her own and was having difficulty making ends meet, suggested that Mrs. Rush take Johnnie Lou back to Tampa with her. This Mrs. Rush did, as she wanted a companion for her own daughter who was of approximately the same age. Dan Highsmith consented to this arrangement.

Since August, 1935, Johnnie Lou has lived in the Rush home as a member of the family. She has received the same loving care, affection, training, and attention as has been bestowed upon appellant's own daughter. During this seven-year period the father has not seen or communicated with the child in any manner, nor has he made any effort to do so. He has made no contribution to her support or maintenance nor taken any interest in her welfare. In short, so far as exterior appearances are concerned he has virtually abandoned the child. She has received good physical treatment and excellent spiritual and moral guidance. She is healthy and happy. She goes to church and Sunday School regularly and is being given public school advantages and musical training. She stands high in her classes at school and has made excellent progress in her music.

Since Mrs. Rush first carried the child to Tampa she has remarried. T. B. Fielding, her present husband, owns his own home and is employed in a good position. He is sober, industrious, respectable. Mr. and Mrs. Fielding bear a good name in the community. They live in moral surroundings. There is a strong mutual attachment between the foster parents and the child. Appellants are amply able to take care of the child and to give her many material advantages.

Dan Highsmith has remarried. He and his present wife live in Jacksonville and he is employed at the Naval Air Base as a workman. Two of his unmarried sons live with him. They both go to public school. Robert, age 16, had finished the 7th grade at the time of the habeas corpus hearing; Tommy, age 10, was preparing to enter the 3rd grade when the public schools reopened in September. Neither of the children attend Sunday School. They rarely are required to attend church.

From a critical study of the testimony in the case, we have no hesitancy in arriving at the conclusion that the moral, intellectual, and material welfare of the child will be best subserved by allowing it to remain with the foster parents. Johnnie Lou is now 13 years of age and is of a high degree of intelligence for a child of that age. The record shows that she is in happy surroundings. She is .de-

voted to her foster parents. They regard her with the same affection that they would were she their own daughter. She is of sufficient mental capacity to be able, rationally, to exercise some choice in the matter. She prefers to remain with the foster parents. This is but natural under the circumstances. Theirs is the only home that she has ever known. She has forgotten her father. She does not remember her sisters and brothers. She had never seen the step-mother prior to the habeas corpus hearing. What might be her future if she were taken from her present home and placed in new surroundings with virtual strangers, is highly problematical.

There are cases where parental rights must yield to the feelings, interest, and rights of others. We think that this is such a case. The foster parents have looked after the child's social, moral and educational interests for seven years, and the child, itself, has become attached to the environment and the people who have made possible the happiness of its early years. The father has neglected her and allowed such attachment to ripen. Under such circumstances the fixed relationship of the child and its foster parents cannot be changed without seriously risking the future happiness of he child.

The order is reversed and the cause remanded for the entry of a judgment awarding the custody of the child to the appellants.

It is so ordered.

BUFORD, C. J., TERRELL, and BROWN, JJ., concur.

CHAPMAN, THOMAS and ADAMS, JJ., dissent.