98 So.2d 735 (1957)
Annice A. TORRES, Appellant,
v.
Edward F. VAN EEPOEL and Margaret Torres Van Eepoel et al., Appellees.
Supreme Court of Florida.
September 18, 1957.
Rehearing Denied December 19, 1957.
John P. Corcoran, Jr. (of Brown, Brown & Corcoran) and Tom J. Johnson, Jr., Tampa, for appellant.
Myron G. Gibbons (of Gibbons & Gibbons), Tampa, for appellees.
*736 THORNAL, Justice.
Appellant, Annice A. Torres, now Annice A. Justice, seeks reversal of a final decree of adoption of her two minor children entered in favor of the appellees Van Eepoel, who were petitioners for adoption in the trial Court.
The determining question is whether the evidence in the light of the findings and conclusions of the Chancellor supports the entry of the decree of adoption.
Mrs. Justice is the natural mother of the two minors who were, respectively, eight and ten years of age when the adoption decree was entered in January, 1956. In 1950 her husband, the father of the children, was killed in an automobile wreck. The appellee, Margaret Torres Van Eepoel, is the sister of the deceased father, and the appellee, Edward F. Van Eepoel, is her husband.
After the death of the father the entire responsibility for the care, maintenance and rearing of the two children rested upon the mother. Within two months after his death she went to work in order to earn the money to take care of the children and herself. In December, 1954, when the mother was out of the city, having left the children in the care of a "baby sitter," they were delivered into the custody of another aunt (a second sister of the deceased father). Subsequently, on December 22, 1954, the temporary custody of the children was delivered to the appellees on order of the Juvenile Court of Hillsborough County. On February 3, 1955, the appellees petitioned the Circuit Court for the adoption of the two children. The appellant strenuously opposed the petition. Extensive testimony and other evidence was presented to the Chancellor by the contesting parties in support of their respective positions. After several postponements, the proceeding culminated in the decree of adoption now under attack.
We think it unnecessary to delineate in detail many of the unpleasant facts and allegations asserted by the parties.
The sum of the position of the appellees in support of their prayer for adoption of the children was that the appellant-mother had since the death of her husband neglected the children spiritually, physically and materially. It was their contention that the children were ill-kept and were denied the natural and normal love and affection of a mother. They further support their position with claims of immorality directed at the mother. We pretermit a catalog of the evidence for the reason that we find it unnecessary to summarize the testimony in view of the findings of the Chancellor which we hereafter mention. Suffice it at this point to record that in the ultimate the Chancellor decided that the decree favorable to the adoption should be entered. He supported his decree with certain findings which we feel lead to the conclusion which we hereafter announce.
To support her claim for a reversal, the appellant-mother insists that the record fails to show that she should be denied her natural right to the custody of her children because of the alleged mistreatment, abandonment or alleged immorality.
The appellees take the position that the record adequately sustains the decree of the Chancellor.
The ultimate judgment of the Chancellor was grounded on two basic findings derived from the evidence submitted. Quoting from his order for the adoption we find the following, towit:
"* * * This continued conduct of the respondent in absenting herself on pleasure visits with the knowledge that the children were not receiving the care that they rightfully should have received, exhibits a sense of irresponsibility and indifference to their welfare, though perhaps not of itself justifying the granting of the adoption, must however, be taken into consideration in the decision of the case.

"The remaining phase of the case, as made by the evidence, involved the *737 respondent's immoral conduct during this same period, beginning not long after the death of her husband and continuing up to the final hearing of this cause. There is evidence of her intimate association with one or more men, beginning soon after her husband's death, indicating to some extent that her conduct was subject to criticism and perhaps suspicion of immorality." (Emphasis added.)
After announcing these findings the trial Judge then makes reference to the relationship between the appellant-mother and one Mr. Justice. The record sustains the factual proposition that when the mother was absent from her home in December of 1954 she met Mr. Justice for the first time. He was then married. At this time, however, he was himself experiencing domestic difficulties not brought about by the relationship with the appellant. This initial acquaintance developed into courtship and, according to the finding of the lower Court when the testimony was taken, the record supports the conclusion that the man was in the process of dissolving his marriage with his first wife and held the bona fide intention of marrying the appellant. The correctness of this observation by the trial Judge is sustained by the fact that pending the hearing of this matter in this Court, the appellant has filed a motion to correct her name in the pleadings to show that she and Mr. Justice were married shortly after his own divorce became final.
The Chancellor found that the conduct of the appellant and her now husband was such that it could not be ignored in the final determination of the welfare of the minor children involved.
In the ultimate the basis of the decree of adoption as reflected by the findings of the trial Judge may simply be resolved into the factual conclusion that the mother had exhibited a sense of indifference to the children which of itself would not justify the entry of the adoption decree but that this situation coupled with the alleged immorality was adequate to support the decree.
It should be noted in passing that the alleged immoral conduct of the mother was not exhibited at any time in the presence of the children, if we assume that the immorality was sustained by the evidence.
We accord to the findings of the Chancellor a full measure of presumptive correctness to which they are entitled. When we do this, however, we are confronted by a finding that the sense of indifference of the mother was not in and of itself sufficient to support the adoption decree and that the alleged immorality was a course of conduct that culminated in a legitimate marriage contract with attendant implications of a perfectly happy and well-provided for home. The husband of the appellant according to this record is a businessman of affluence who indicated by his testimony a desire to assist his wife in the upbringing of the children and in making adequate provision for their care and maintenance.
It is unnecessary to elaborate upon our oft-repeated conclusion that a natural parent has a right to the custody of his or her children absent conduct or conditions that justify a deprivation of the right in the interest of the welfare of the children. This legal right is one that should not be lightly regarded. True the right is not absolute as against the actual welfare of the child. However, in order to deprive a parent permanently of the custody of his offspring the evidence relied upon should be clear and convincing. In re Whetstone, 137 Fla. 712, 188 So. 576. Conditions which might justify relieving a parent temporarily of the custody of his child would not necessarily support absolute and permanent transfer of the child to a stranger or even other near-kin. In the instant case the children were delivered to an aunt by an employed "baby sitter" while the mother was absent from the city and immediately upon her return she *738 was summoned before the Juvenile Judge on two days' notice. Her children were then ordered to be delivered to the appellees and the mother has ever since been denied even the privilege of visiting or seeing them. It is noted in passing that the Juvenile Judge did not undertake to place the children permanently in the custody of appellees for subsequent adoption. Nevertheless, within six weeks after appellees received the children this adoption proceeding was instituted.
We are frank to observe that this appellant-mother has much mending to do if she is going to clothe her tragedy-infected life with a cloak of decency, respectability and domestic happiness. However, the significant factor appearing from the record is that she has in good faith apparently entered upon a new way of life that will enable her to re-establish her home on a basis free of the difficulties and influences that doubtless contributed to the instant problem.
We have no doubt that the appellees are as devoted to these children as any aunt and uncle could be. Likewise it is certainly indicated that the children would be well cared for and well raised in the home of the appellees. Nevertheless, the record supports a conclusion that this mother has survived an exceedingly difficult period in her life and gives every indication now of straightening her course and justifying the custody and companionship of the children which she produced out of her own travail.
Even accepting the factual conclusions of the Chancellor we are, therefore, compelled to the judgment that the decree of adoption was infected with error and must be reversed. The cause is remanded for further proceedings consistent herewith.
Reversed.
TERRELL, C.J., and HOBSON, ROBERTS and O'CONNELL, JJ., concur.