101 So.2d 915 (1958)
In re Adoption of Phyllis Irene DE WALT, a Minor.
Cleopatra Helen DE WALT, Appellant,
v.
Lawrence DE WALT and Clara DeWalt, Appellees.
No. 290.
District Court of Appeal of Florida. Second District.
March 28, 1958.
Rehearing Denied April 25, 1958.
*916 Shutts, Bowen, Simmons, Prevatt & Julian, John Cotton Howell, Wm. P. Simmons, Jr., Miami, for appellant.
Warren Goodrich, Jerry Hussy, Bradenton, for appellees.
ALLEN, Acting Chief Judge.
This is an appeal from a final decree of adoption, dated February 25, 1957, which granted the petition of Lawrence DeWalt and Clara DeWalt for adoption of the minor daughter of their deceased son. The child's mother, Cleopatra Helen DeWalt, contested the adoption.
The record discloses that the appellant, Cleopatra Helen DeWalt, and Lawrence Philip DeWalt, the parents of Phyllis Irene DeWalt, a nine year old child who was the subject matter of the adoption proceedings, were divorced by a decree of the Circuit Court for Dade County, Florida, on or about the 13th day of August, 1954. The appellant was granted custody of the minor child, but subsequently, on or about November 9, 1954, the court changed the custody of the child from the mother to the father, determining that the mother was unfit to have the custody of the child. The order granted custody of the child to Lawrence Philip DeWalt with reasonable rights of visitation to the mother.
The father of the child carried her to Lee County, Florida, to the home of his parents, petitioners in the adoption proceedings, and left the child in their custody. The child's father was an aviator, and on or about February 8, 1956, was killed in an accident. Fifteen days later Lawrence DeWalt and Clara DeWalt filed a petition to adopt the minor child without the consent of the natural mother. The mother of the child vigorously opposed the adoption proceedings, questioning the jurisdiction of the court, the validity of the petition for adoption, and other aspects of the proceedings.
The appellant, in her question No. 1, contends that since the divorce was instituted in Dade County and custody was granted the father in the divorce proceedings, the court retaining jurisdiction to change that custody if necessary, a Circuit Court in another circuit did not have jurisdiction to proceed under the adoption statutes.
In the case of Younger v. Younger, 1895, 106 Cal. 377, 39 P. 779, 780, an action was brought by the father for modification of the divorce decree awarding him the custody of the child. In the decree the father sought to modify, a divorce was granted to the mother of the child and she was awarded custody of the child. The mother removed with the child to another county and took up her residence in the family of her grandfather. Subsequently, the child was, by consent of the mother, adopted by the grandfather. It was after the adoption proceeding that the father filed the petition in the original divorce proceeding, praying that the custody of the child be awarded him on the ground that the mother had abandoned the child to the control of others and had since married again. The mother answered the petition by alleging the adoption in another court, and denying the jurisdiction of the divorce court to make any order in the premises. The court modified the divorce decree by requiring that the child be permitted, at all reasonable times, to be in the custody of the father. An appeal was taken, and the Supreme Court of California, in its opinion, said:
"It is contended by appellant, and, we think, correctly, that the Santa Clara court had no jurisdiction to *917 make the order appealed from, for the reason that its jurisdiction over the child had ceased and determined absolutely upon its adoption. The Civil Code provides for the adoption of minor children and the circumstances and conditions under which such adoption may be had. * * * The jurisdiction of the court in Santa Clara county over the child in the divorce proceeding grew out of and depended solely upon the fact that it was the child of the parties to that action. As such, the law gave that court jurisdiction to award the custody of the child as it might deem for its best interest, and to direct provision for its maintenance and support. By the adoption proceeding, however, the status of the child was wholly changed. It became ipso facto the child of another, and ceased to sustain that relation, in a legal sense, to its natural parents. * * * In other words, the child ceased to sustain any such relation to the parties or the cause as warranted any further exercise of jurisdiction over it. It was withdrawn as a part of the res of that proceeding, and the jurisdiction of the court, so far as it was concerned, was as absolutely extinguished as though death had removed it.
"* * * And, for these reasons, there is nothing in the point that the superior court or judge in Yolo county was without jurisdiction in the adoption proceedings by reason of the fact that the jurisdiction of the Santa Clara court in the action for divorce had first obtained. The jurisdiction of the judge of Yolo county was as exclusive and complete in the one instance as that of the superior court of Santa Clara in the other. The one was in no way dependent upon or subject to the other. * * *"
In the case of In re Whetstone, 1939, 137 Fla. 712, 188 So. 576, the Court held that attempted adoption proceedings of an illegitimate child was not binding on the child's mother, notwithstanding that the mother appeared in commitment proceedings in juvenile court, where no notice of proceedings had been given to her. The ground for such holding was that since judicial proceedings for commitment of dependent children and judicial proceedings for adoption are distinct, notice of and participation in commitment proceedings cannot be substituted for the required consent to or notice of subsequent, proposed adoption proceedings.
The appellant's question No. 2 challenges the sufficiency of the petition for adoption for allegedly failing to charge that the mother was an unfit person to care for the minor child.
Chapter 72 of the Florida Statutes contains the statutory law on adoption. Said chapter requires that all petitions for adoption be filed in the county in which the petitioner or petitioners reside, or in which is located any licensed child placing agency to which the child sought to be adopted has been permanently committed, or in which such child may reside. Said chapter also requires that the petition shall state the name, sex, color and age of the child, if known; the new name of the child if change of name is desired; the name, age and place of residence of the adopting parent or parents, and if married, the place and date of their marriage; the name and address of the agency to which such child has been permanently committed, and whether or not the agency is a licensed child placing agency as defined in said chapter; and the reasons why the petitioner or petitioners desire to adopt the child. See Sections 72.08 and 72.12, Florida Statutes, 1955, F.S.A.
We note from the record that the petition for adoption had attached to it a certified copy of the order by the Dade County Circuit Court in which custody of the involved child was changed from the *918 mother, appellant here, to the father. Such order found that the mother was unfit to retain custody of the child. We think this, together with the other allegations of the petition, stated sufficient grounds for seeking adoption under the above sections of the statute.
The appellant further questions the jurisdiction of the court on the ground that the Florida Adoption Statute is "designed for children of the State who have no natural parents, or who have been abandoned by their natural parents or whose natural parents have voluntarily surrendered their rights as parents, and who have no legal guardian, and who have not been permanently committed to a licensed child placing agency," and therefore, a child who does not fit the quoted part below cannot be adopted.
Section 72.07, Fla. Stat. 1955, F.S.A., reads as follows:
"The state welfare board, for the purpose of adoption, is hereby designated the official and proper guardian for all minor children of this state who have no natural parents, or who have been adandoned by their natural parents, or whose natural parents have voluntarily surrendered their rights as parents, and who have no legal guardian, and who have not been permanently committed to a licensed child placing agency. In the event of such permanent commitment, the licensed child placing agency to which such children have been so committed is hereby designated the official and proper custodian and guardian of such children."
As seen from the above quote of said Section 72.07, appellant's contention under this point is based upon the statutory description of the state welfare board's guardianship powers and duties. Nowhere in Chapter 72 does it appear that the provisions thereof relating to adoption are limited to those minors described in said Section 72.07.
We are of the opinion that the Circuit Court of the Twelfth Circuit had jurisdiction of the adoption proceedings in this case, that the petition for adoption was sufficient under the statute, and that the child who was sought to be adopted was a proper subject for adoption under the Florida Adoption Statute and decisions of this State.
The last question of the appellant, which attacks the sufficiency of the evidence to show that the natural mother was not a fit and proper person to care for the child involved in the adoption proceedings, requires serious thought and consideration. The lower court had before it an order of the Circuit Court of the Eleventh Judicial Circuit judicially determining that the mother was not a fit person for the custody of the child involved in this proceeding. There was also a report of the welfare agency stating that the mother was not a fit person for the custody of the child. It should be noted, however, that the custody order in the divorce proceeding was taken some two years before the date of the adoption decree and the report of the Welfare Board was based on an ex parte investigation in which none of the parties appeared to testify before the Court and were not subject, therefore, to any cross-examination by the respondent-mother.
It should be borne in mind that custody in a divorce case can be changed by the court at any time the circumstances show a need for the change. Therefore, such orders are temporary. On the other hand, a final decree in adoption proceedings is permanent and requires a stronger showing to determine the unfitness of the parents than is required in a divorce proceeding as it touches on custody of a minor child.
In the case of Fielding v. Highsmith, 1943, 152 Fla. 837, 13 So.2d 208, 209, the Supreme Court held, in a habeas corpus proceeding, that an adoption decree was invalid as against the father where his consent had not been given, he was given *919 notice of the proceedings, nor was such notice attempted to be given. The Court, however, denied the father the right to the custody of the child as it was shown the best interest of the child would be served by permitting her to remain in the custody of the adopting parents.
The Court in its opinion, said:
"By the great weight of authority, an order of adoption procured by a stranger will be declared invalid as against the natural parents, unless it is made to appear that the parents have consented to the adoption; or that it is manifestly for the best interest of the child that it be taken from the custody of the natural parents by such a judicial proceeding, of which the parents have notice and an opportunity to be heard; or that the minor has been abandoned, and notice of the proceedings and opportunity to be heard cannot be given to the parents because their whereabouts are unknown; or that the parents have been permanently deprived of the custody of the child by a competent court having jurisdiction of the parents and the child. Even where adoption statutes do not specifically require personal notice to be given, it must be presumed that the legislature intended that the natural parents should have an opportunity to be heard before having their rights to the child declared forfeited; if such statutes are to be upheld as constitutional. Such, we think was the view of this court in the case of In re Whetstone, 137 Fla. 712, 188 So. 576, when considered in the light of the authorities there relied upon. See In re Knott, 138 Tenn. 349, 197 S.W. 1097; 1 Am.Jur. Sec. 40, p. 642; Id. Sec. 44, p. 644; 2 C.J.S. Adoption of Children § 38 b, p. 421; Annotations: 24 A.L.R. 416, 76 A.L.R. 1078. To adopt a contrary view would be to recognize that the courts have arbitrary authority to forfeit the rights of the parent to his minor child, without giving him an opportunity to be heard in his own behalf. Such procedure would be despotic in the extreme and contrary to the plainest principles of morality and justice."
In the case of Torres v. Van Eepoel, Fla. 1957, 98 So.2d 735, 736, in which a Circuit Court of Hillsborough County had entered a final decree of adoption and the natural mother appealed, the Supreme Court, in an opinion by Mr. Justice Thornal, reversed the lower court and remanded for further proceedings. The mother of the subject children, to support her claim for a reversal, insisted that the record failed to show that she should be denied her natural right to the custody of her children because of alleged mistreatment, abandonment or immorality.
The facts as set forth in the opinion were briefly these: In 1950 her husband, the father of the children, was killed in an automobile wreck. Mrs. Van Eepoel is the sister of the deceased father, and her husband sought to adopt the two children. After the death of the father, the mother went to work in order to earn money to take care of the children. In December, 1954, when the mother was out of the city, having left the children in the care of a baby-sitter, they were delivered into the custody of a second sister of the deceased father; and subsequently the temporary custody was given to the appellees by the Juvenile Court of Hillsborough County. On February 3, 1955, the appellees petitioned the Circuit Court for the adoption of the two children, which was vigorously opposed by the mother-appellant. The Court, in its opinion, said:
"The sum of the position of the appellees in support of their prayer for adoption of the children was that the appellant-mother had since the death of her husband neglected the children spiritually, physically and materially. It was their contention that the children were ill-kept and were denied the natural and normal love and affection *920 of a mother. They further support their position with claims of immorality directed at the mother. We pretermit a catalog of the evidence for the reason that we find it unnecessary to summarize the testimony in view of the findings of the Chancellor which we hereafter mention. Suffice it at this point to record that in the ultimate the Chancellor decided that the decree favorable to the adoption should be entered. He supported his decree with certain findings which we feel lead to the conclusion which we hereafter announce.
* * * * * *
"The ultimate judgment of the Chancellor was grounded on two basic findings derived from the evidence submitted. Quoting from his order for the adoption we find the following, to-wit:
"`* * * This continued conduct of the respondent in absenting herself on pleasure visits with the knowledge that the children were not receiving the care that they rightfully should have received, exhibits a sense of irresponsibility and indifference to their welfare, though perhaps not of itself justifying the granting of the adoption, must however, be taken into consideration in the decision of the case.
"`The remaining phase of the case, as made by the evidence, involved the respondent's immoral conduct during this same period, beginning not long after the death of her husband and continuing up to the final hearing of this cause. There is evidence of her intimate association with one or more men beginning soon after her husband's death, indicating to some extent that her conduct was subject to criticism and perhaps suspicion of immorality.'
"After announcing these findings the trial Judge then makes reference to the relationship between the appellant-mother and one Mr. Justice. The record sustains the factual proposition that when the mother was absent from her home in December of 1954 she met Mr. Justice for the first time. He was then married. At this time, however, he was himself experiencing domestic difficulties not brought about by the relationship with the appellant. This initial acquaintance developed into courtship and, according to the finding of the lower Court when the testimony was taken, the record supports the conclusion that the man was in the process of dissolving his marriage with his first wife and held the bona fide intention of marrying the appellant. The correctness of this observation by the trial Judge is sustained by the fact that pending the hearing of this matter in this Court, the appellant has filed a motion to correct her name in the pleadings to show that she and Mr. Justice were married shortly after his own divorce became final.
"The Chancellor found that the conduct of the appellant and her now husband was such that it could not be ignored in the final determination of the welfare of the minor children involved.
"In the ultimate the basis of the decree of adoption as reflected by the findings of the trial Judge may simply be resolved into the factual conclusion that the mother had exhibited a sense of indifference to the children which of itself would not justify the entry of the adoption decree but that this situation coupled with the alleged immorality was adequate to support the decree.
"It should be noted in passing that the alleged immoral conduct of the mother was not exhibited at any time in the presence of the children, if we assume that the immorality was sustained by the evidence.

*921 "We accord to the findings of the Chancellor a full measure of presumptive correctness to which they are entitled. When we do this, however, we are confronted by a finding that the sense of indifference of the mother was not in and of itself sufficient to support the adoption decree and that the alleged immorality was a course of conduct that culminated in a legitimate marriage contract with attendant implications of a perfectly happy and well-provided for home. The husband of the appellant according to this record is a businessman of affluence who indicated by his testimony a desire to assist his wife in the upbringing of the children and in making adequate provision for their care and maintenance.

"It is unnecessary to elaborate upon our oft-repeated conclusion that a natural parent has a right to the custody of his or her children absent conduct or conditions that justify a deprivation of the right in the interest of the welfare of the children. This legal right is one that should not be lightly regarded. True the right is not absolute as against the actual welfare of the child. However, in order to deprive a parent permanently of the custody of his offspring the evidence relied upon should be clear and convincing. In re Whetstone, 137 Fla. 712, 188 So. 576. Conditions which might justify relieving a parent temporarily of the custody of his child would not necessarily support absolute and permanent transfer of the child to a stranger or even other near-kin. * * *" (Italics ours.)
In another opinion by the Supreme Court written by Mr. Justice Thornal, that of Wiggins v. Rolls, Fla., 100 So.2d 414, 415, the Supreme Court reversed a decree of the Circuit Court for Dade County in which the step-father of the child was seeking his adoption.
The Court, in its opinion, said:
"We have held that adoption statutes should be construed to authorize the adoption of children by strangers only in cases where the natural parents consent or where there is proof that the child has been abandoned by its natural parents or where the parents have been permanently deprived of custody or, finally, that it is manifested to be to the best interests of the child that the adoption be decreed after due notice to the natural parents. In re Whetstone, 137 Fla. 712, 188 So. 576.
"Our adoption statute contemplates that in the absence of consent a natural parent should be afforded a full and complete opportunity to object to an adoption in an adversary proceeding in which the rights of the parent should be accorded due recognition. Sections 72.14 and 72.16, Florida Statutes, F.S.A.; Soucek v. Melvin, 159 Fla. 867, 32 So.2d 912. See also 1 Am.Jur., Adoption of Children, p. 642, Sections 41 et seq.
"We deem it appropriate to emphasize that we are here dealing with the matter of adoption as distinguished from the matter of custody. The adoption decree finally and for all time determines the rights of the objecting parent. It completely severs the relationship of parent and child. The matter of what might appear to be for the best interests of a minor in determining temporary or prolonged custody will not always support a decree of adoption. Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208; Browning v. Favreau, Fla. 1952, 60 So.2d 186.
"We are not here losing sight of the rule that the courts will always consider first and primarily the welfare of the minor. At the same time we are of the view that due regard should be given to the rights of a natural parent. He should not be deprived of the *922 privileges and responsibilities of parenthood against his consent unless in some fashion he has abandoned his offspring or has otherwise demonstrated that he is not a fit subject to continue to enjoy the privilege. In Steets v. Gammarino, Fla. 1952, 59 So.2d 520, a case cited by both parties, we held that the conduct of a father in completely ignoring his child, failing to support him and totally disregarding every aspect of parental responsibility was sufficient to establish an abandonment that would justify a decree of adoption favorable to a step-father. However, applying the rule of the last cited case in converse, we do not find in this record any element of abandonment by the natural father. * * *
"* * * Likewise, we find little if anything in this record to lead us to the notion that the ultimate overall long range welfare of the minor necessarily requires the adoption when balanced against the natural rights of the parent in this instance."
A child may be adopted by its step-father with the mother's consent over the opposition of the natural father if the record affirmatively shows the unfitness of the natural father. Such was the case of Steets v. Gammarino, Fla. 1952, 59 So.2d 520, 521, in which the Supreme Court reversed an order of the lower court, which had denied the petition of the step-father to adopt the said child. In its opinion, the Court said:
"It is a very serious matter to take a child from the natural parent and place it in the hands of another but the courts of this country have not hesitated to do so when the child's welfare required. Here we are confronted with a case in which the natural father has never shown the slightest interest in his child until this suit was brought, at which time he was more than six years old and is now almost eight years old. He has contributed nothing to the child's support but made an agreement with his mother to relieve him of that, the child does not know him, his conduct for five years or more reveals a complete withdrawal from and neglect of parental duty or responsibility. He has never performed the natural and legal obligation to care for and support the child. What more is required to constitute abandonment on the part of a parent?"
We are of the opinion that the adoption decree must be reversed, with directions to the able chancellor to take further testimony to determine if the appellant is a proper person to have the custody of her child.
Reversed.
SHANNON, J., and SANDLER, HARRY N., Associate Judge, concur.