In re **ADOPTION OF HAWKINS**
No. 64-C-7843.

Circuit Court, Dade County.
December 24, 1962.

Wolfson & Diamond, Miami Beach, for the stepfather.

RALPH O. CULLEN, Circuit Judge.

This is a stepfather adoption proceeding. The natural parents of the minor were married in June of 1951 and the child was born July 5, 1952. The natural father, Charles Hawkins, went into the military service in 1952 and spent two weeks at home on furlough with his family prior to being sent to Germany. During his military service the mother received an allotment for the child. He testified that he corresponded with his then wife until his letters were returned with the notation that the addressee had moved.

He was discharged from the service in 1954, and returned to Miami to find that his wife and son had moved from their former place of residence and he did not know their whereabouts. After searching, he located her and inquired as to why she had moved and made her whereabouts unknown to him, to which she replied that she—"was having her own fun." Thereafter, she moved again without making her new address known to the natural father of the child.

In April of 1961, the natural mother obtained a divorce from Charles Hawkins, obtaining service upon the defendant by constructive service. Her sworn complaint alleges that the defendant was a citizen and resident of Miami, Dade County, Florida, but that his address and residence was unknown to the plaintiff, he having left the marital domicile more than six years ago. In this adoption proceeding, Charles Hawkins testified that he received no notice whatsoever of this action and it is undisputed that his former wife, the plaintiff in the divorce suit, was aware that the defendant had a mother residing in Coconut Grove who at all times knew the address of her son. In this divorce action custody of the minor child was awarded to the mother.

It is admitted that the natural father made no contribution to the support of the child from 1955 to 1961 and the natural mother testified in this adoption proceeding that she was making no complaint about his non-support of the child, and admitted no request or demand was made at this time of the father for support. In April 1961, the natural mother married the petitioner herein and the child lives with them at their home.

Personal service of the petition for adoption was made upon the natural father who has filed objection to the adoption. The sole question before the court is the sufficiency of the evidence to support a decree of adoption over the natural father's objection. The only allegation of the petition as to the natural father is that since the date of the final decree of divorce he has made no contribution to the support and maintenance of the child and has shown little or no interest in the health and welfare of said child and has very rarely visited the child. The mother in her testimony states that the father was disinterested in her and the boy and failed to visit the child and show any parental interest. The response of the natural father to this testimony was that he was thwarted in his efforts to see his child by the natural mother's moving from time to time, and making her whereabouts and that of the child unknown to him, and he readily admits and recognizes his responsibility to support this child, which he agrees to accept and fulfill. The evidence is clear that the mother of this child did not encourage the father to visit his child, and

admitted strained relations exist between the petitioner and the natural father of the child.

While the evidence shows that petitioner is an altogether fit and proper person to become an adoptive parent, yet the evidence as a whole is insufficient to sever the relationship existing between the natural father and son. Courts have repeatedly stated that it is a very serious matter to take a child from a natural parent and place it in the hands of another. The evidence is not clear and convincing that the natural father had no desire to see his child or had lost all interest in him and in his welfare, or had surrendered his rights as a natural parent.

We are not dealing with custody here, but with adoption, and the law is settled that a father should not be deprived of the privilege and responsibility of parenthood against his consent unless he has in some way abandoned his offspring or otherwise demonstrated that he is not a fit subject to enjoy such privilege.

The court in In re De Walt's Adoption, 101 So.2d 915, said—

"It is unnecessary to elaborate upon our oft-repeated conclusion that a natural parent has a right to the custody of his or her children absent conduct or conditions that justify a deprivation of the right in the interest of the welfare of the children. This legal right is one that should not be lightly regarded. True the right is not absolute as against the actual welfare of the child. However, in order to deprive a parent permanently of the custody of his offspring the evidence relied upon should be clear and convincing. In re Whetstone, 137 Fla. 712, 188 So. 576. Conditions which might justify relieving a parent temporarily of the custody of his child would not necessarily support absolute and permanent transfer of the child to a stranger or even other near-kin."

And in the case of Wiggins v. Rolls, 100 So.2d 414—

"We have held that adoption statutes should be construed to authorize the adoption of children by strangers only in cases where the natural parents consent or where there is proof that the child has been abandoned by its natural parents or where the parents have been permanently deprived of custody or, finally, that it is manifested to be to the best interests of the child that the adoption be decreed after due notice to the natural parents."

This case is controlled by the principles enunciated in Wiggins v. Rolls, supra, and Meyers v. Shifrin, 146 So.2d 770.

It is accordingly ordered, adjudged and decreed that the petition for adoption be, and the same is hereby denied, and the petition be, and the same is hereby dismissed.