CHARLES CARROLL, Judge.
This is an appeal from a decree of adoption, filed by the natural father of the child involved and by the paternal grandparents.[1] The appellant Michael L. Shaw presents three contentions, first that the *89 court which granted the adoption decree was without jurisdiction, second, that the court erred in not permitting him to be heard in opposition to the adoption, and third, that the decree of adoption was unwarranted on the evidence.
The question of jurisdiction as contended for by the appellant was settled adversely to his position, on a collateral appeal to the fourth district court of appeal. See Lewison v. State, Fla.App.1966, 193 So.2d 53.[2] On consideration of the record and briefs we conclude that the second and third contentions made by the appellant are meritorious.
The child involved in this case, Tami Mari Shaw, was born in Broward County on June 12, 1964. For reasons not disclosed on the record, the Juvenile Court of Broward County, where the parties then resided, found the child to be a dependent child within the meaning of Chapter 39, Fla.Stat., F.S.A. On December 21, 1964, that court granted temporary custody of the child to the natural mother, Wanda Belle Shaw. Mrs. Shaw subsequently moved to Dade County and filed suit for divorce against her husband, the appellant here, Michael L. Shaw. She obtained a final decree of divorce on January 15, 1965, which granted her custody of the child, with visitation rights to the father. The circuit court then entered an order in the divorce suit transferring the matters of custody and child support to the juvenile and domestic relations court of Dade County.
The mother did not retain custody. She placed the child in the care of Mr. and Mrs. Cochran, the appellees here.[3] They filed a petition in the circuit court in Dade County for adoption, on October 29, 1965. The mother thereupon executed a written consent to adoption. As a non-consenting parent the father, then residing in North Carolina, was served by publication with notice of the pending adoption proceedings, as provided for in § 72.13 Fla.Stat., F.S.A. The return date fixed in the notice to him was November 30, 1965. A decree pro confesso was entered against him on December 1, 1965, on a praecipe wliich sought it for “failure to answer or otherwise plead to the petition for adoption.”[4] Hearing on the adoption petition was not held until March 30, 1966.
While the petition was pending a conflict over jurisdiction to control custody of the *90 child developed between the Broward County juvenile court and the circuit court in Dade County. Orders and counter-orders were made relating to custody. In the circuit court of Dade County they culminated in an injunction order against further interference'with the custody of the child. One outgrowth of that contest between the two courts was an order of the Broward County juvenile court holding in contempt the attorney of record for the petitioners in the Dade County adoption proceeding. The attorney appealed, and obtained reversal of the contempt order (Lewison v. State, supra), but that decision was not rendered until after the hearing and decree in the adoption suit.
From the ■ pleadings on file it appears that during pendency of the adoption proceedings the father relied on the theory that the Broward court was entitled to control the custody of the child. However, when the matter was to come(on for final hearing on the adoption petition, the father employed an attorney who, on the day prior to the hearing, filed three motions on his behalf in the Dade County adoption suit; a motion to dismiss, claiming want of jurisdiction and insufficiency of the petition; a motion to set aside the decree pro confesso, asserting the father had a meritorious defense and desired to resist the petition; and a motion for continuance, referring to the jurisdictional conflict which had ensued between the courts of Dade and Broward Counties, and, as an excuse for his delay, implying his prior reliance on the Broward County court as having jurisdiction of the child.
When the cause came on for hearing on March 30, 1966, the father was present, with his attorney.’ The court first considered and denied the father’s motions. Testimony was then heard from the petitioners and from a representative of the state welfare board.[5] The examination in chief of the witnesses was conducted by the court, and the petitioners’ attorney then cross-examined. At the conclusion of the direct and cross-examination of the first witness, who was the representative of the welfare board, the father’s attorney inquired as to whether he would be allowed to cross-examine the witnesses and was informed by the court that he would not.[6]
We are impelled to uphold the contention of the appellant that he was improperly denied his right as a non-consenting parent to be heard in opposition *91 to the proposed adoption. An adoption proceeding is not 'an ordinary adversary suit. A parent who has not consented to the adoption is not styled in the cause as a party defendant. He is required' to he served with a notice, not a summons. The failure of a non-consenting parent to respond can result in a decree of adoption terminating his parental rights, and this is necessary in order to give validity and permanence to a decree of adoption where a parent has not consented thereto. But the courts have placed great emphasis and importance on the right of a non-consenting parent to be heard in an adoption proceeding. In re Whetstone, 137 Fla. 712, 188 So. 576; Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208, 209; Wiggins v. Rolls, Fla. 1958, 100 So.2d 414, 415-416. Therefore, when a non-consenting parent is present at the adoption hearing and is obviously seeking to object to the adoption and to assert his parental rights to the child, the fact that such parent did not file a formal answer within the time specified in the notice served upon him should not operate to prevent such a parent from being heard. Thus in Wiggins v. Rolls, supra, the Supreme Court said:
“Our adoption statute contemplates that in the absence of consent a natural parent should he afforded a full and complete opportunity to object to an adoption in an adversary proceeding in which-the rights of the parent should be accorded due recognition. Sections 72.14 and 72.16, Florida Statutes, F.S.A.; Soucek v. Melvin, 159 Fla. 867, 32 So.2d 912. See also 1 Am.Jur., Adoption of Children, p. 642, Sections 41, et seq.”
By § 72.16 Fla.Stat., F.S.A., the adoption statute provides that “Any person, * * * shall have'the right after the filing of any petition, to file an answer and objections to the granting of an order of adoption and shall thereupon appear as a . respondent in the proceedings.” (Italics supplied) No time or cut-off date is fixed there for the filing of objections by “any person.” Since such a person (other than a parent, or an agency to which the child has been formally committed) would not be entitled to service of notice of the filing and pendency of the petition for adoption, the time for his objection would riot be controlled by any return day. Presumably objection interposed by such person " any time before hearing would serve to entitle the person to participate in the hearing. Should a natural parent be held to have a lesser right than a stranger to participate and be heard in a proceeding for adoption of his child? Moreover, in this case the father’s motions filed prior to the hearing showed his reason for not having recognized the jurisdiction of the court where the adoption was pending and responded therein earlier. The decision in Lewison v. State, supra, showing that his reason for his action, or non-action, was unfounded in law, had not been rendered at the time of the adoption hearing.
We find merit also in the appellant’s third contention, that on the evidence presented by petitioners, which failed' to show the father’s abandonment of the child or his unfitness to have custody, a decree of adoption forever cutting off his parental rights should not have been entered, despite his failure to file a timely response, when he was present at the hearing and desirous of claiming and establishing his rights as a parent.
 The petition for adoption did not contain any allegations of abandonment by the father of his parental rights or as to his fitness to have custody. Assuming, without so holding, that absence of such allegations in a petition for adoption would not preclude the petitioners from offering evidence of abandonment or unfitness,[7] in *92 order to succeed in a -case such as this it was incumbent on the petitioners to present clear and convincing evidence that the father had abandoned his parental rights or was unfit, or, failing in that, to present evidence of facts showing it to be manifestly in the interest of the child to allow the adoption in favor of strangers notwithstanding. No such evidence was presented in this'cause.
Some questions were asked of the witnesses regarding whether the father had paid child support. The answers disclosed he became in arrears at one, point, but had paid up the arrears, and that so far as the witnesses knew he had complied with the orders of the circuit court and Broward juvenile court for payment of child support. Such payments were made by the father although prior to the entry of the divorce decree which required the payment of child support the mother had given over custody to the Cochrans, who had undertaken to relieve her of the care of the child.
Also, a question was asked as to whether the father had visited the child, apparently on the theory that failure to visit the child would show indifference. However, it was disclosed that the father, residing in North Carolina, had made a visit to the child at the home of the Cochrans, approximately a year earlier. Moreover, the record dispelled any assumption of his indifference. It was disclosed that the father and his parents had sought to obtain custody through the Broward juvenile court, and that he had employed counsel and come to Florida to insist on his parental rights and resist the proposed adoption. In addition, the report of the welfare board, after an investigation which it had caused to bef made in North Carolina more than a month before the adoption hearing, stated that the father “maintains his continued parental interest in the adoptee.”
The decisions limit adoption of children by strangers to those cases where the natural parents consent, or where there is clear proof that the child has been abandoned by its natural parents or they have been permanently deprived of custody, or where the evidence establishes it is manifested to be to the best interests of the child that the adoption be decreed notwithstanding, after notice and opportunity to the non-consenting natural parent or parents to be heard. After thus pronouncing the law in Wiggins v. Rolls, supra, the Supreme Court said: “He (a natural parent) should not be deprived of the privileges and responsibilities of parenthood against his consent unless in some fashion he has abandoned his offspring or has otherwise demonstrated that he is not a fit subject to continue to enjoy the privilege.” See also, In re Whetstone, supra, (188 So. at 579); Fielding v. Highsmith, supra, (13 So.2d at 209); and Torres v. Van Eepoel, Fla. 1957, 98 So.2d 735, 737, where the Supreme Court, after referring to the established rule that a natural parent has a right to custody of his children in the absence of conduct or conditions that would justify depriving him of that right in the interest of the welfare of the children, said as follows:
“ * * * This legal right is one that should not be lightly regarded. True the right is not absolute as against the actual welfare of the child. However, in order to deprive a parent permanently of the custody of his offspring the evidence relied upon should be clear and convincing. In re Whetstone, 137 Fla. 712, 188 So. 576. Conditions which might justify relieving a parent temporarily of the custody of his children would not necessarily support absolute and permanent transfer of the child to a stranger or even other near-kin. * * * ”
In the circumstances of this case, including the failure of the petitioner to prove abandonment or unfitness on the part of the non-consenting father, or, in the absence thereof, to show facts making it manifestly in the best interest of the child for the adoption to be allowed, we conclude that the interests of justice will best be served *93 by remanding the cause for a further hearing at which the non-consenting father shall be afforded an opportunity to participate and be heard and on which the merits of the cause shall be determined with due regard to the rule in such adoptions.
Accordingly, the decree appealed from is reversed and the cause is remanded for further proceedings as above set forth.
Reversed and remanded.

. The record does not reveal that the paternal grandparents filed any pleadings or otherwise took part in the adoption proceedings. Their status as appellants is unexplained. We treat the appeal as one by the child’s father, the appellant Michael L. Shaw, yho was served with notice, filed certain pleadings and was present at the adoption hearing.

. In dealing witli the question of jurisdiction in that case the court said:
“ * * * We believe the jurisdiction of the Juvenile Court of Broward County was at best concurrent with the jurisdiction of the Circuit Court for Dade County which entered a Final Decree of divorce and was not ‘exclusive’ as contended in the Juvenile Court’s contempt order.
“Furthermore, adoption proceedings are entirely separate and distinct statutory proceedings and are neither connected with nor controlled by prior custody awards entered by another court. Modacsi v. Taylor, Fla.App.1958, 104 So.2d 664. * * *

“ * * * [W]hile the Juvenile Court of Broward County may still have had some limited jurisdiction over the case by virtue of its initial adjudication of dependency and its initial custody award, the jurisdiction of the Circuit Court for Dade County was unaffected, and the Juvenile Court could not act so as to thwart the adoption proceedings.”

. At the subsequent adoption hearing this was disclosed in the evidence, as follows:
“By the Court: Q Mr. Cochran, how long have you had this child?
“A Sir, we have had her ever since she was about five months old. Sir, we lost her for a short time.
“Q How. long was she away?
“A I think about two months.
“Q How old is she now?
“A She is approximately twenty-two months old, sir.
¡ií í(! iji ‡ ¡I'
“Q Did this mother voluntarily deliver this child to your custody. — to you and your wife?
“A Yes, sir.

. A party against whom a decree pro con-fesso has been entered may challenge the resultant decree, by appeal, for insufficiency of the proof offered and as not being in conformity to law. Lybass v. Town of Ft. Myers, 56 Fla. 817, 47 So. 346, 348-349.

. The welfare board had filed a report recommending dismissal of the petition and that custody of the child be granted to the father. That report and recommendation included the following:
“The natural mother, Wanda Belle Shaw, signed a specific consent on October 29, 1965, and indicated that she was in accord with these proceedings when interviewed by a representative of the State Welfare Board on December 17, 1965.
“The natural father, Michael L. Shaw, has not consented to this action. When interviewed by a representative of the Orange County Department of Public Welfare, Hillsborough, North Carolina, on February 17, 1966, he stated that he is opposed to this adoption. The natural father and his present wife desire to have Tami live with them. The paternal grandparents, Joseph and Catherine Shaw, have stated that they wish to assume the responsibility of caring for Tami until such time that the child can be placed permanently with her natural father.
* * * * * *
“The State Welfare Board does not question the fact that the petitioners love this child and are providing adequate care for her; however, the natural father has not consented to this action and maintains his continued parental interest in the adoptee. Since the natural father and the paternal grandparents have indicated their desire to assume responsibility of this child, it is recommended that they be notified of the court hearing.
“Therefore, the State Welfare Board recommends the petition be dismissed and the child be given to the natural father.”

.
“Mr. Lewison: No further questions.
“Mr. Ryan: Your Honor, may I ask you one question?
“The Court: Yes, sir.
“Mr. Ryan: Would we be able to inquire of any of the witnesses on cross examination?
“The Court: I am afraid not, sir. I am afraid not, sir.”

. The section of the adoption statute which deals with the contents of the petition (§ 72.12 Fla.Stat., F.S.A.) provides, as to the grounds or basis upon which the adoption is sought, only that the petitioner allege “[t]he reasons why the petitioner or petitioners desire to adopt said child.”