32  499
38  230

## F. F. MARSHALL, PLAINTIFF IN ERROR, VS. HENRY REAMS, DEFENDANT IN ERROR.

1. The mother has the superior legal right to the custody and control of her minor illegitimate children, and can transfer such right and custody to another; but the rights of the mother or her transferee are not absolute and beyond control.

2. In all contentions for the custody and control of minor children the benefit and welfare of the child are the principal matters which guide and control the courts in awarding custody. The ties of nature and of association, the character of the applicant for the child, its age, health and sex, the moral or immoral surroundings of its life, the benefits of education and development, and pecuniary prospects, as well as other considerations, enter into the judicial determination.

3. Where the child has reached the age of discretion, it will often be allowed to make its own choice, but this is not a controlling right of the child. Welfare controls choice, and the court will not permit the choice of the infant to lead it into an improper custody. The rights of parents and guardians will also be respected, and such rights will not be disregarded by the courts in order to gratify the mere wishes of a child, when the parent or guardian is a proper person to be entrusted with its custody.

4. There is no fixed age when the discretion of a child begins, but mental capacity is the test.

5. While one standing *in loco parentis* may moderately chastise for correction a child under his control or authority, yet, where it is shown that an uncle to whom a child has been committed to raise by its parent, has inflicted immoderate and cruel punishment on it to such an extent as to alienate its feelings, and to cause it to desire a liberation from the uncle's control, a court should not, on *habeas corpus*, restore by coercive order the child to the uncle, where it is made to appear that the child has reached the age of intelligent discretion and has deliberately chosen to remain with another, against whom no objection can be made, and who has obligated himself to provide for the child in a manner more favorable than would be its condition with the uncle.

Writ of Error to the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*J. R. Challen* for Plaintiff in Error.

*John Wallace* for Defendant in Error.

MABRY, J.:

Henry Reams in his petition for *habeas corpus* presented to the Circuit Judge alleged that F. F. Marshall, without lawful authority, held in custody one Edward Reams, a minor, and that petitioner was entitled to the custody and control of said minor. The right to the custody and control of the minor is based upon the alleged fact that his mother before her death gave him to petitioner, his uncle, as his own child, to raise and educate until he became twenty-one years old, and that petitioner has raised him from the age of three years up to the time of filing the petition, when he was between fifteen and sixteen years old. The mother of this child was unmarried, and the petition alleges that he had no father.

In his return to the writ F. F. Marshall states that he held in his care and custody the person of Edward Reams by virtue of an order, judgment and decree of the court of the County Judge of Duval county granting and assuring the custody of said minor to him by an indenture of apprenticeship then in full force and effect. That the minor, Edward Reams, was over sixteen years old and desired to remain in the care and custody of him, said Marshall, who is able and willing to care for, educate and prepare him for future useful-

ness and independence, and that the petitioner, Henry Reams, was unfit and unable to care for, educate and train the said Edward Reams, and had treated him so unkindly and cruelly as to alienate him, and he refuses to go to, and positively refuses to live with the said petitioner. The return also denies that Edward Reams was given to petitioner as alleged, and that he raised him.

The Circuit Judge after hearing the evidence, awarded the care and custody of the person of Edward Reams during his minority to the petitioner, Henry Reams, as it appeared that he was a proper person to have such care and custody, and that Marshall pay the costs of the proceedings. Marshall has sued out a writ of error.

The testimony tends to show, and we accept it as sufficient to sustain the conclusion, that the boy, Edward Reams, when not over three years old, was given by his mother just before her death to her brother, Henry Reams, to raise and care for during minority, and that with the exception probably of one or two years immediately after the mother's death, this boy has remained continuously in the family and under the control of his uncle up to the time he went into the employment of plaintiff in error, which was some time in May, 1893. The boy's mother was unmarried and he had no father.

The mother has the superior legal right over all others to the custody and control of her minor illegitimate child. No claim of the father is presented in the case before us, and it is perfectly clear from the authorities that the mother of Edward Reams had the legal right to transfer his custody to her brother Henry. Some of the English cases say that the right of the mother to the control of an illegitimate child continues until it

arrives at the age of fourteen, when it may exercise a choice. The two recent cases of The Queen vs. Nash, 10 Q. B. Div., 454, and the Queen vs. Barnardo, 1 Q. B. Div. (1891), 194, fully discuss the custody of illegitimate children in England.

The case of Jones vs. Harmon, 27 Fla., 238, 9 South. Rep., 245, recognizes the right of the mother of an illegitimate child to transfer its custody to another, and we need not stop to cite authorities to sustain this well established rule of law. The result is that the custody of Edward ·Reams by his uncle, Henry Reams, was rightful as being derived from the mother who had the right to transfer such custody. But this legal right in the mother or her transferree is not absolute and beyond the control of other circumstances that may surround the case. In applications for the custody of children it may be stated as a general rule sustained by the law that the court is not bound to deliver the child to the claimant, but may, where the interest of the child demands it, leave it where its welfare will be best promoted. "It is the benefit and welfare of the infant to which the attention of the court ought principally to be directed." This, it is said, is the "pole star" by which courts are guided in all such cases, whether the contention be between father and mother, or between them and a third person, or between strangers. Mercein vs. People, 25 Wendell, 64, 35 Am. Dec., 653; State vs. Smith, 6 Greenleaf, 462, 20 Am. Dec., 324 and notes; Church on Habeas Corpus (2nd ed.), Section 446 and authorities cited in note 1.

The ties of nature and of association, the character of the applicant for the child, its age, health and sex, the moral or immoral surroundings of its life, the benefits of education and development, and pecuniary prospects, as well as many other considerations, enter into

the judicial determination. The choice of the child where it has reached the age of intelligent discretion also plays an important part in cases of rival claimants to the same custody. It is said in Church on Habeas Corpus, sec. 447: "Where the child has reached the age of discretion, it will often be allowed to make its own choice, although the person chosen is not one whom the court would voluntarily appoint. But this is no controlling legal right of the infant. It is not entitled to its absolute freedom from all custody, but an adult is. It is not the whim or caprice of the child which the courts respect, but its feelings, its attachments, its preferences, and its probable contentment; and it is a well-settled rule of law that whether the court will regard the preference of an infant depends upon the reasonableness of his wish, and the intelligence which he manifests. 'Welfare' controls 'choice,' and the court will not permit the choice of the infant to lead it into an improper custody. The court is also bound to respect the rights of the parent or guardian, and will not allow these rights to be overthrown by the mere wishes of a child who has not reached years of discretion, and who is too young to choose for itself, where such parent or guardian is a proper person to be intrusted with the child. The wishes, however, of children of sufficient capacity to choose for themselves should be given especial consideration when their parents have for a long time voluntarily allowed them to live in the family of another, and the court will make no coercive order in such cases to enforce the mere legal right of the parent to their custody against the manifest inclination and reasonable choice of the children to remain where they are." Hurd on Habeas Corpus, 532, 533.

The decisions in this country do not fix any definite number of years when the age of discretion begins, but mental capacity is the test, and when the minor shows sufficient capacity mentally to exercise an intelligent choice, and no objection can be made to the person chosen, the court will ordinarily allow such choice to prevail. Church on Habeas Corpus, sec. 443. *In re* Goodenough, 19 Wis., 291, Chief-Justice Dixon said that "when the infant is above the age of fourteen years, he must, it seems, in every case, choose for himself. The court will not compel him, upon *habeas corpus*, to submit to parental authority." Whether or not this be the correct rule we do not say, but the mental capacity of the child and the reasonableness of its choice will be considered in doubtful cases in determining a proper custody.

An application of the foregoing rules to the facts of the case before us impresses us with the view that the Circuit Judge committed an error in awarding the custody of the person of Edward Reams to the petitioner, Henry Reams. In arriving at this conclusion it is not necessary that we determine the legal effect of the apprenticeship proceedings before the County Judge as a bar to the relief asked in this suit, and we do not decide anything in reference to this phase of the case.

We will not go into a minute discussion here of all the testimony, but confine ourselves to a statement of what is the effect of it. It shows, in addition to the gift and custody of the boy as already stated, that Henry Reams has a large family consisting of eight children, and has twenty-three acres of land on which he raises truck. Henry testified that he had brought up in his own family the boy, and had clothed, fed and educated him as one of his own children, and in

this statement he is corroberated by his wife and other witnesses, but neither he nor any of his witnesses say how his children had been treated, clothed or fed. Henry admits that he had hired out the boy to catch fish and chop wood, but says that he never gave him work too hard for him. The other testimony tends strongly to show that the boy's work was rather heavy for him. It is also made to appear, we think, that the boy was poorly clothed and shod by his uncle, and this showing is not overcome by the general statement that the boy, Edward, was treated the same as the other children of Henry. As near as we can ascertain from the testimony, Edward Reams is about sixteen years old, and it is perfectly clear that he has become thoroughly alienated from his uncle and his uncle's wife. He was examined before the court and testified that his uncle had not treated him well, and that he had been made to undertake work that he could not do, and was whipped by his uncle for failing to do it, and that he had l een compelled to fish by dragging a seine in cold weather with ragged clothes and shoes with his feet sticking through. He stated that he had been often whipped by his uncle, and had been hit by him on the head with a hammer handle that made a scar then to be seen, and that he then had scars on his body from beatings inflicted by his uncle. Dr. Marshall corroborates this statement as to the scars on the person, and also says that when he first saw the boy he was in rags. It is also made to appear that Henry Reams whipped the boy on his return from the house of Dr. Marshall for looking into "Aunt Linda's" basket. It seems the boy told his uncle that Mrs. Marshall had requested that he look into the basket of "Aunt Linda" for sugar and things when she went away. The boy testifies that his uncle claimed that it was for looking into the

basket that he whipped him, but the boy says the whipping was for getting a pair of shoes, and not for looking into the basket. He further testifies that he did not want to go back to his uncle, and that he would not go back, but preferred to live with Dr. Marshall. Henry Reams, although examined in rebuttal, did not deny hitting the boy on the head with the hammer handle, or that he inflicted scars on his person. He stated that he whipped the boy whenever he needed it, and that he whipped him on his return from Marshall's house tor looking into "Aunt Linda's" basket, but it was with a small switch about eight inches long. Edward Reams stated that this whipping was with a whip about three feet long. It also appears that plaintiff in error has entered into covenant before the County Judge to teach Edward Reams the art of cooking, and to educate him in the elements of reading, writing and arithmetic, and to deposit in bank to his credit three dollars per month until he reaches his majority, then to be drawn out on his check, and at that time to give him a new suit of clothes, shoes, blanket and a sum of money not less than fifty dollars. The boy consents to this arrangement and is anxious to remain with plaintiff in error. The circumstances of this case, considering the treatment received by Edward Reams as shown by the evidence, his age, his strong aversion to returning to his uncle and the benefits that promise to accrue to him from his choice in remaining with Dr. Marshall, clearly overcome the mere legal right in Henry Reams derived from the mother, and we think the court was in error in not allowing him to remain where he was.

We do not desire to be understood as denying the right of a parent, or one standing *in loco parentis*, to moderately chastise for correction a child under his or

her control and authority; but where a child has been committed by its parent to an uncle to raise, and the testimony, uncontradicted, shows that the uncle has inflicted immoderate and cruel punishment on the child to such an extent as to alienate its feelings, and to cause it to desire a liberation from the uncle's control, the court should not on *habeas corpus* restore the child to the uncle where it is made to appear that the child has reached the age of intelligent discretion and has deliberately chosen to remain with a stranger against whom no objection can be made, and who has obligated himself to provide for the child in a manner more favorable than would be its condition with the uncle.

While we think that the court erred on the showing made here in awarding the custody of Edward Reams to his uncle, it is not to be inferred from what we decide that Marshall is entitled to any coercive control over the boy by virtue of the apprenticeship proceedings before the County Judge. This is a question not determined here, and we do not intimate any approval of the proceedings in the apprenticeship, or adjudicate any rights under them.

Judgment reversed for proceedings not inconsistent with this opinion.