ALLEN, Acting Chief Judge.
A petition for modification of a final divorce decree was filed by Mozelle Marsh Woodard which alleged that the petitioner is a sister of Stanton R. Marsh, the father of the minor child, William Stanton Marsh, and that the father died August 8, 1957; that petitioner resides with her husband and two minor children in Sumter County, Florida, and since June of 1956 the said minor child has resided with the petitioner; that Leona Elizabeth Marsh, the mother of the minor child, resides in Detroit, Michigan; that the mother of the child and the father of the child had been divorced; that the mother of the child became extremely ill, mentally and emotionally, so that it was necessary for her to be physically restrained, and over a period of several years has been in various hospitals in the City of St. Petersburg and in Detroit; that the father of the child originally brought the child to petitioner’s home with the intention of having the child spend the summer months on their dairy farm; that as a result of the child’s getting along so well with the petitioner and her husband, the father decided the child should spend the school year there; the child remained with the petitioner and her husband through the school year 1956-57, attending school in Bushnell, where he was in the second grade. That the child has his own horse, dog, and calf, enjoys living on the dairy farm, is well adjusted in his school and is receiving good grades; that the mother of the child has continued to be hospitalized by reason of mental and emotional illness and will continue for an indefinite period into the future; and that for that reason it would be for the best interest and welfare of the child if permanent legal custody were awarded to petitioner.
The child’s mother filed a return to the petition in which she asked that the custody of the child be given to her brother, Robert Krupa and her sister-in-law, Kate Krupa.
So, in reality, this is a custody contest between a paternal aunt and uncle and a maternal aunt and uncle.
A guardian ad litem was appointed for the mother, and he was required to make an investigation and report to the court. His report, as well as the testimony of the parties and their witnesses, indicates that both families seeking custody would be very desirable families as far as the welfare of the child is concerned. The Krupa *509 family in Detroit is an urban family, well adjusted, with a nice house and in a good neighborhood. They have three children. The Woodard family lives at Panasoffkee, a rural community near Bushnell, Florida. Both families are financially sound and enjoy good reputations. The major distinctions between the families arise by reason that one is urban and the other rural.
It appears from the court’s summary of the evidence that the main reason for the court’s decision to leave the child in the custody of the Woodards, the paternal aunt and uncle, was that the child had been living with them for sometime and had become established with that family. The order of the court reserves jurisdiction of the parties and of the subject matter, including said minor child, and of such orders touching upon the welfare and interest of the child as may be proper.
The record in this case divulges the type of decision that tries the soul of a circuit judge. On one side, the heart rending instance of a mother who, under normal circumstances, would be entitled to and would be given the custody of her child but, in the instant case, is not in a position to have the custody of her child and, in fact, is not asking for it but is asking that custody be vested in her brother and sister-in-law. On the other side, there is the question of what is to the best interest of the child who has been in the custody of his paternal aunt and uncle for the past two years with the known factor that he is well adjusted, happy, and content with his environment which condition could well be affected materially by transferring him from a happy home life with relatives with whom he has been associated for several years to a home that is strange to him.
The able chancellor, in the opinion filed in this cause, states :
“This is one of the most tragic cases it has been the duty of this Court to sit in judgment upon since he has been on the bench.”
The Court, in his opinion, recites that a psychiatrist testified that the mother is, and was, suffering from paranoid schizophrenia, and that a person suffering from this disease was apt to be more dangerous to those closer to them than to others. This testimony, however, was contravened by the testimony of another doctor. The court further observed:
“ * * * Apparently, the lady’s civil rights, or mental capacity have not been restored to her. She is still under legal disability as far as the Court is concerned * * *.
“I want to say here, that I think there is very little choice between the two homes, rural or urban, so far as I can gather from the report given to me. But, to my mind, to take a child up from his roots, where he has been for a year or a year and a half, and remove him into completely strange surroundings, is a dangerous experiment with his life, and to do that solely to attempt to assist in the rehabilitation of the mother, it would be a mistake at this time. * * * I do not say that in time to come, the Court won’t change its mind as to the custody matter.
í}í % % íjí 5{i
“I am going to reserve jurisdiction for future orders on custody and support, so that the net result of this is that the petition for temporary custody is granted until further order of the Court is given, with rights of reasonable visitation, with instructions to them that the child write his mother at least once a month, and progress reports from school be sent to her, and the petition of the mother for custody to be given to Mr. and Mrs. Krupa is denied.
“May I say, Mr. and Mrs. Krupa, I admire you for wanting to do what you want to do for this child. Unfortunately, we are not able to divide *510 the child up. I think that probably I know you did it out of the goodness.of your heart, and for the benefit of the child, as well as for the benefit of your sister. But, to my mind, to experiment with the child’s future in life, at the present time, is not justified. * * * ”
We are of the opinion that on this record the duty of the chancellor was to determine what was for the best interest of the child. He had the parties before him, and from a reading of the record in this case, the court concurs in the judgment ■of the chancellor and, finding no error in the record, the decision is affirmed.
Affirmed.
KNOTT, JAMES R., and STEPHENSON, GUNTER, Associate Judges, concur.