113 So.2d 232 (1959)
Leon EADES, Appellant,
v.
Louis DORIO, Appellee.
No. 868.
District Court of Appeal of Florida. Second District.
June 19, 1959.
Robert L. Pursifull, Tampa, for appellant.
Billie B. Bush, Tampa, for appellee.
ALLEN, Judge.
This is an appeal from a final decree which granted the petition of Fannie Lee Roughton for custody of the minor daughters of her deceased daughter. The minor daughters' father, Leon Eades, contested the custody proceedings and now appeals.
The record discloses that the mother of the children, Jewel Dorio, formerly Jewel Eades, was divorced from appellant on September 21, 1948, and by the final decree was awarded the custody of the children. Jewel then married the appellee, Louis Dorio, in 1954 and the children continued to reside with the mother and her new husband. On April 13, 1958, Jewel Dorio, the natural mother, died intestate leaving the children without any provision for their custody, but in the actual custody of her husband, who admittedly has no claim to them.
Appellant then filed a petition for writ of habeas corpus to obtain custody of his children. The lower court issued the writ demanding the children be brought before the court. The maternal grandparents of the children, Fannie Lee Roughton and Robert L. Roughton, had filed a petition in the original divorce action requesting custody of the children. The lower court combined these matters and treated the cause as a habeas corpus proceeding with an intervention by the maternal grandparents. Hearings were then held by the court.
Testimony of the appellant showed that he had remarried; had three small children by his second wife; owned his home subject to a $6,500 mortgage payable at $65 per month; that he is a copartner with his father in an electrical supply business earning about $500 per month; that he and his family attend church regularly; that his mother, the paternal grandmother of the children, would assist him in rearing the children; and that he and his family enjoy a good reputation in the community.
*233 The maternal grandparents introduced testimony showing that Leon Eades, the father, had the children brought to visit with him once a year at Christmas Time; and that on three occasions the father had to be cited for contempt in order to force him to pay delinquent support payments to the children's mother.
Testimony in behalf of the maternal grandparents showed that the grandmother had cooked, washed, and ironed on different occasions for the children; that after the divorce, the mother and children lived with the grandparents for a while; that they own their home free and clear; that the grandmother attends church regularly; that two married daughters of the grandmother will assist in care of the children; that the grandfather is a home builder and financially able to support the children; but that none of the four children of the grandparents ever graduated from high school.
At the time of the hearings the two children's ages were: Linda, 13, and Cynthia, aged 11. At all three hearings the children expressed a desire to live with the maternal grandparents. The lower court had the children stay with the grandparents until the end of the school year in 1958, and then had the children stay with the father for six weeks. At the final hearing the children expressed no desire to continue living with the father but did express a strong desire to return to the maternal grandparents.
Upon final hearing, the lower court awarded custody of the children to the maternal grandmother, Fannie Lee Roughton, with visitation privileges to the natural father. The court, in its final order, reserved jurisdiction of the subject matter and parties to the cause.
Appellant bases his entire argument on the premise that as between the maternal grandmother and the natural father, when neither party has previously had permanent custody of the children, the natural father should prevail in the absence of a showing: that the natural father is unfit or that the best interests of the children would be served by awarding custody to another.
Appellant cites Torres v. Van Eepoel, Fla. 1957, 98 So.2d 735, as controlling on this issue. In the Torres case an adoption proceeding had been brought by the deceased father's sister and her husband to adopt the two children whom they had cared for since two months after the father's death. The children's mother contested the adoption proceeding. It appears that the mother had gone to work in an attempt to support herself and the children, which required that she be absent from the home at times, and had been guilty of some immoral conduct. The mother had since remarried, however, and, in the words of the Supreme Court, "had survived an exceedingly difficult period in her life and gave every indication of straightening her course and justifying the custody and companionship of her children."
The Supreme Court, in reversing the chancellor's granting of the adoption to the aunt and uncle, held that a natural parent has a right to the custody of her children and in order to deprive a parent permanently of the custody of her offspring, the evidence of unfitness relied upon should be clear and convincing.
It should be noted that the Torres case was an adoption proceeding in which a final decree is permanent and requires a stronger showing to determine the unfitness of the parents than is required in a custody proceeding. Custody can be changed by the court at any time the circumstances show a need for the change. Therefore, such orders are temporary in nature. DeWalt v. DeWalt, Fla.App. 1958, 101 So.2d 915. In the instant case, the court stated in its discussion prior to entering the final order:
"These children here are not very happy over where they are, (referring to the father's house) obviously, and the only thing I see to do is for them to go back to the grandmother and stay there through this school year with the *234 right of the father to go and visit them and have them in his house on portions of the weekends and what-not. * * *
"* * * there is no way of turning them over to the father at this time. Next summer, when that comes around, we will deal with the situation again at that time. * * *
"There is nothing else to do but award the custody of them to the grandmother at this time."
Thus, it is apparent that the chancellor contemplated a possible change of custody in the future but based this present custody award on the situation prevailing at that time. A very decisive factor evidently was the desire of the children to live with the grandmother. Although the desires of a child as to custody are not controlling, the court should consider them where the child is old enough to have a definite preference. A case similar to the instant case is Cone v. Cone, Fla. 1953, 62 So.2d 907, 910, wherein an action was brought by the husband for a modification of the custodial provisions of the divorce decree, and the mother of the wife, who had died, was permitted to intervene and seek custody. The lower court had awarded custody to the husband, and the maternal grandmother appealed. The Supreme Court, in reversing the lower court, stated:
"* * * The children want to stay with Mrs. Evans, rather than go to their father; and, while this is not controlling, it is certainly entitled to special consideration in determining the question of custody. We think, then, that considering all the circumstances and, particularly, the ages of the children, their best interests would be served by awarding their custody to Mrs. Evans, for the present, with such provisions for visitation by the father and support money for the children as may to the Chancellor seem fitting and proper." (Emphasis added.)
The Supreme Court has stated that it is always reluctant to reverse an order of a chancellor concerning custody, and in the few instances that such orders have been reversed, it has been only upon the showing of a clear abuse of the chancellor's discretion.
The Supreme Court stated in Grant v. Corbitt, Fla. 1957, 95 So.2d 25, 28, in upholding the award of custody to an aunt but without prejudice to the right of the mother to petition for custody at a future time:
"* * * We are fully cognizant of the rights of a natural parent to the custody of his or her child and subscribe to the oft-stated rule that, all things being equal, the natural parent has the superior right of custody as against relatives or other third persons. Nor have we overlooked the rule that the rights of the parents will not be disregarded `in order to gratify the mere wishes of a child, when the parent or guardian is a proper person to be intrusted with its custody.' Marshall v. Reams, 32 Fla. 499, 14 So. 95. But this court cannot, in any type of case, overturn the decision of a Chancellor made in the exercise of his judicial discretion in the absence of a clear showing of an abuse thereof; and, in a child custody case, the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feel forces, powers and influences that cannot be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody." (Emphasis added.)
This court, in the case of Marsh v. Marsh, Fla.App. 1958, 105 So.2d 507, upheld the decision of the Circuit Court of Pinellas County awarding custody of a child to the paternal aunt and uncle in a case where the father was dead and the mother was suffering from a mental disease. In that case this *235 court stated that it was the duty of the chancellor to determine what was for the best interest of the child and concluded since the chancellor had the parties before him, including the child, that the court would concur in the judgment of the chancellor.
The lower court is affirmed.
KANNER, C.J., and SHANNON, J., concur.