ALLEN, Chief Judge.
This is an appeal from an order denying Leo J. Bouchard, the appellant, his petition seeking to gain custody of his child, then about eleven years of age. The appellant and the appellee, Audrey Bouchard (Azzo-pardi), the mother of the child whose *820 custody is involved in this case, were divorced July 22, 1949. A stipulation was filed on August 1, 1949, wherein the appellant was to have custody and care of the child, Ruth Ann Bouchard. On October 9, 1950, the appellee, Audrey Bouchard (Az-zopardi), filed a petition to modify the final decree so that she might have custody of the child. After a hearing on the petition, the circuit judge entered an order denying the petition and granting custody to the maternal grandparents, Mr. and Mrs. A. Coppersmith, who have had the custody since that date. Several subsequent petitions were filed hy Audrey Bouchard (Az-zopardi) seeking custody, which were denied.
On August 10, 1959, the appellant petitioned seeking to gain custody of his child, and after hearing was denied, the court observed in its order that the school term of 1959-60 would open within ten days and that the minor child, who had previously attended school in Fort Pierce, should not have a change in custody made at that time.
The appellant-father was in accord with the order of the court in 1950, giving custody of the child to the maternal grandparents, as he had re-entered the military service. The appellant-father testified that he is now on military duty, stationed in Orlando, that he has remarried and is in a position to have custody of his child. His wife testified that she also desired custody of the child and that although she was working as a waitress that she and the father would be able to regulate their working hours where they could be at home at all times.
A great deal of case law has been written in Florida with regard to the rights of the parents to have the custody of their children, also with reference to a court determining what is the best interest of the child, and the relative importance of a conflict of testimony as to what is the best interest to the child and the parental right to have custody of the child.
The appellant, in his brief quotes from the case of Frazier v. Frazier, 109 Fla. 164, 147 So. 464, 466, as follows:
“The statutes of this state recognize the natural, inherent and consequently legal, right of parents to have the custody of their children. This is a principle resulting from their obligation to maintain, protect, and educate them. See chapter 8478, Acts of 1921, section 5884, C.G.L. [F.S.A. § 744.01.] These duties are thrown upon parents by the laws of nature as well as of society and the state.
“The primary duty of support and maintenance for children rests upon the father — a duty he is not permitted to disregard, and which he could not conveniently discharge if the objects of his duty are entirely withdrawn from his control. 9 R.C.L. 471. Consequently, when a court is called upon, after divorce of the parents, to determine who shall have the custody and care of children of the marriage, it .must take into consideration all of the circumstances of each particular case, and dispose of the children in such manner as may preserve, as far as practicable, the rights of the parents, and which also appear best calculated to secure for the children proper care and attention, as well as virtuous education.
“The welfáre of the child must, of course, be regarded as the chief consideration, Hernandez v. Thomas, 50 Fla. 522, 39 So. 641, 2 L.R.A.(N.S.) 203, 111 Am.St.Rep. 137, 7 Ann.Cas. 446, but the inherent rights of parents to enjoy the society and association of their offspring, with reasonable opportunity to impress upon them a father’s or a mother’s love and affection in their upbringing, must be regarded as 'being of an equally important, if not controlling, consideration in adjusting the right of custody as between parents in ordinary cases. * * * ”
*821 In the case of In re De Walt’s Adoption, Fla.App.1958, 101 So.2d 915, 921, this court, in an adoption case, quoted from the case of Torres v. Van Eepoel, Fla.1957, 98 So.2d 735, 736, another adoption case, as follows:
“ ‘It is unnecessary to elaborate upon our oft-repeated, conclusion that a natural parent has a right to the custody of his or her children absent conduct or conditions that justify a deprivation of the right in the interest of the welfare of the children. This legal right is one that should not be lightly regarded. True the right is not absolute as against the actual welfare of the child. However, in order to deprive a parent permanently of the custody of his offspring the evidence relied upon should be clear and convincing. In re Whetstone, 137 Fla. 712, 188 So. 576. Conditions zvhich might justify relieving a parent temporarily of the custody of his child would not necessarily support absolute and permanent transfer of the child to a stranger or even other near-kin. * * * ’ (Italics ours.)”
In the De Walt’s Adoption case, supra, we also quoted from the case of Wiggins v. Rolls, Fla.1958, 100 So.2d 414, as follows:
“ ‘We deem it appropriate to emphasize that we are here dealing with the matter of adoption as distinguished from the matter of custody. The adoption decree finally and for all time determines the rights of the objecting parent. It completely severs the relationship of parent and child. The matter of what might appear to be for the best interests of a minor in determining temporary or prolonged custody will not always support a decree of adoption. Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208; Browning v. Favreau, Fla.1952, 60 So.2d 186,’”
A study of other cases involving adoption and of custody without adoption shows that more leeway is given to the discretion of the lower court in custody cases than in adoption cases with reference to a determination by the lower court of what is the best interest of the child.
In the case of Eades v. Dorio, Fla.App. 1959, 113 So.2d 232, 234, this court upheld the lower court where the custody of minor children was awarded to the maternal grandmother as against the father of the children where a deciding factor was the desire of the children to live with the grandmother. In our opinion we stated:
“The Supreme Court has stated that it is always reluctant to reverse an order of a chancellor concerning custody, and in the few instances that such orders have been reversed, it has been only upon the showing of a clear abuse of the chancellor’s discretion.
“The Supreme Court stated in Grant v. Corbitt, Fla.1957, 95 So.2d 25, 28, in upholding the award of custody to an aunt but without prejudice to the right of the mother to petition for custody at a future time:
“ ‘ * * * We are fully cognizant of the rights of a natural parent to the custody of his or her child and subscribe to the oft-stated rule that, all things being equal, the natural parent has the superior right of custody as against relatives or other third persons. Nor have we overlooked the rule that the rights of the parents will not be disregarded “in order to gratify the mere wishes of a child, when the parent or guardian is a proper person to be intrusted with its custody.” Marshall v. Reams, 32 Fla. 499, 14 So. 95. But this court cannot, in any type of case, overturn the decision of a Chancellor made in the exercise of his judicial discretion in the absence of a clear showing of an abuse thereof; and, in a child custody case, the opportunity of the Chancellor to observe the demeanor and personalities of the parties and their witnesses and to feei forces, powers and influences that can *822 not be discerned by merely reading the record, assumes a new importance because of the many intangibles that must be evaluated in deciding the delicate question of child custody.’ (Emphasis added.)”
We do not have before us the express wishes of the child in this case. We shall also observe that both parents of the child have an interest in the custody of this child, who has lived with her grandparents for a long period of time.
We also note that the able trial judge below considered primarily the effect upon the child of changing custody so close to the inception of a new school year and this may have been the main consideration in his refusal to change the custody of the child.
We do not see from the record before us that the trial court erred in its order.
Affirmed.
SHANNON, J., and WILLIAMS, VOLIE A., Jr., Associate Judge, concur.